IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**RIA R SQUARED, INC.**
  a Delaware Corporation,

Plaintiff,

- against -

**PHILLIP MCCOWN**
  an individual,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Civ. Action No.:
Hon. Judge:
Magistrate Judge:

## COMPLAINT

There is no other civil action between these parties arising out of the same transaction or occurrences as alleged in this complaint pending in this court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge.

NOW COMES the Plaintiff RIA R SQUARED INC. ("R Squared"), by and through their undersigned attorney, as and for its Complaint against the Defendant, alleges as follows:

### NATURE OF THE ACTION

1. Plaintiff R Squared sues defendant Phillip McCown ("Defendant") for the return of funds that are rightfully owed to R Squared. Those funds were

Page 1

12160803.2

fraudulently obtained from R Squared by Paul McCown ("Paul") – the then-Chief Financial Officer of Wyoming Catholic College and a brother of the Defendant – who transferred $375,000 of his ill-gotten gains to Defendant for no consideration whatsoever.

## THE PARTIES

2. Plaintiff R Squared is a registered Delaware corporation, in good standing, primarily conducting business out of New York City, New York.

3. Upon information and belief, Defendant is a citizen of Michigan and his last known address is 2576 Locksley Ct., Troy, MI 48083.

## JURISDICTION AND VENUE

4. Jurisdiction is proper pursuant to 28 U.S.C. § 1332 (diversity of citizenship).

5. The amount in controversy in this matter exceeds the sum of $75,000.00.

6. Jurisdiction is proper in this District as the Defendant resides in or is deemed to be a resident here.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because (i) Defendant resides in or is deemed to be a resident within the Eastern District of Michigan and (ii) a substantial part of the events or omissions giving rise to the claims occurred in this District.

## THE RELEVANT FACTS

### A.   PAUL MCCOWN'S FRAUD

8. Upon information and belief, early in 2021 Paul, the then-Chief Financial Officer ("CFO") of Wyoming Catholic College ("WCC"), told his employer that he had become extraordinarily wealthy and wished to make a substantial donation to WCC.

9. In March 2021, Paul was introduced to an executive of an investment advisory firm affiliated with plaintiff R Squared.

10. During the introduction, Paul represented that he was seeking advisory services on behalf of WCC relating to WCC's endowment fund, which was about to receive substantial additional funds (from Paul's promised donation, although he did not explain that at the time).

11. In March 2021, Paul was introduced to David Kang – the Chief Executive Officer of plaintiff R Squared, a global alternative asset manager, and the President of R Squared's affiliated investment advisory firm – in connection with providing advisory services to WCC.

12. Later in March 2021, Paul advised Kang that he had amassed substantial personal wealth and was also seeking investment advisory services on his own behalf.

12160803.2

13. That same month, Paul provided R Squared with various bank statements purportedly from Wyoming Community Bank in Lander and US Bank in Minneapolis. Those statements purported to show that Paul had hundreds of millions of dollars, including a purported balance of $750,323,282 in his Wyoming Community Bank account.

14. In the ensuing weeks, R Squared received various documents purportedly executed by Wyoming Community Bank Vice President and Branch Manager Kendall Hayford, from the email address khayford@wyocommunityb.com. Those documents included, among others, a Deposit Account Control Agreement and two "attestation" forms apparently on Wyoming Community Bank letterhead verifying the account balance in Paul's account.

15. Shortly thereafter, Paul requested that R Squared loan his entity, McCown Enterprises, LLC, $15 million to alleviate a temporary cash-flow issue. In order to nurture the relationship with WCC formed through Paul, and based upon Paul's financial documentation, R Squared agreed to loan $15 million to McCown Enterprises.

16. On May 10, 2021, Paul executed a Promissory Note and Security Agreement on behalf of McCown Enterprises, LLC for the $15 million loan.

17. On May 11, 2021, R Squared wired a total of $14.7 million (the $15 million loan amount less an origination fee) in accordance with wire instructions provided by Paul.

18. Shortly after funding the loan, R Squared learned that the bank statements provided by Paul, as well as the attestations and Deposit Account Control Agreement purportedly signed by Wyoming Community Bank Vice President Hayford, were forged, inaccurate and fraudulent. Indeed the President of Wyoming Community Bank affirmed that the bank statements were "not true and correct statements" and were "forgeries" and that the attestations were "false" and did not "accurately reflect the bank's records." (*Affidavit of Scott Estep* attached hereto as Exh. A). Further, Kendall Hayford, the Vice President of the branch who purportedly signed the documents, affirmed that he "had never seen any of the documents" and the signatures were forged. (*Affidavit of Kendall Hayford* attached hereto as Exh. B).

### B. DEFENDANT'S RECEIPT OF $375,000 FRAUDULENTLY OBTAINED FROM R SQUARED

19. On or about May 11, 2021, Paul transferred the majority of the $14.7 million out of his business's account at Wyoming Community Bank. Specifically, Paul made numerous transfers, including but not limited to transferring $375,000 to Defendant, his brother.

20. Defendant gave no consideration for the $375,000 that he received from Paul's fraudulently obtained funds.

12160803.2

## **COUNT 1 - UNIFORM VOIDABLE TRANSACTION ACT, MCL §566.34**

21. R Squared hereby repeats, re-alleges and incorporates by reference the allegations contained in the paragraphs above.

22. The Michigan Uniform Voidable Transaction Act, MCL §566.34 ("Transfer with intent to defraud"), states, in pertinent part, as follows:

> (1) …[a] transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following circumstances:
> > (a) With actual intent to hinder, delay or defraud any creditor of the debtor.
> > (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor did either of the following:
> > > (i) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> > > (ii) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

23. On or about May 11, 2021, Paul fraudulently obtained $14.7 million from R Squared as set forth above.

24. On or about May 11, 2021, Paul, with the intent to hinder, delay or defraud R Squared, transferred $375,000 of the $14.7 million to his brother, the Defendant.

12160803.2

25. Defendant gave no consideration for the $375,000 that he received from his brother Paul.

26. At the time Paul sent $375,000 to Defendant, Paul's remaining assets, if any, were unreasonably small in relation to the $375,000 transferred, and he believed or reasonably should have believed that he would incur debts beyond his ability to pay as they became due.

27. By reason of the foregoing, the $375,000 transfer from Paul to his brother, the Defendant, is voidable under the Michigan Uniform Voidable Transactions Act and R Squared was, and continues to be, damaged as a result thereof.

28. Defendant's liability for damages to R Squared arising out of the Michigan Uniform Voidable Transactions Act is presently in the amount of $375,000 plus interest, and the Court's award should be in that amount. While R Squared hopes and expects that the funds seized from Defendant by the FBI (as well as other proceeds of the fraudulently-obtained $14.7 million transferred elsewhere by Paul) will be turned over to R Squared if Paul is convicted as a result of the government's investigation of his fraudulent activities described above, there can be no assurance that R Squared will receive those funds, or when that might happen if it does happen. Should R Squared receive from the United States government any or all of the $351,300.67 seized from Defendant, of course that will be credited

against damages owed to R Squared by Defendant, or will be returned to him, as plaintiff is not seeking double recovery of the $375,000 fraudulently obtained by Paul and transferred by him to Defendant without consideration.

## COUNT 2 – COMMON LAW CONVERSION

29. R Squared hereby repeats, re-alleges and incorporates by reference the allegations contained in the paragraphs above.

30. Defendant is currently exercising wrongful dominion over at least $23,699.33 of R Squared's money that he obtained through the fraudulent scheme perpetrated by Paul.

31. In early summer 2021, the FBI seized $351,300.67 from Defendant's bank where the proceeds of Paul's $375,000 transfer had been held.

32. R Squared filed suit against Paul in June 2021 and in his answer to R Squared's complaint, Paul invoked the Fifth Amendment in response to nearly every single substantive allegation, including those contained in the paragraphs above. *See* Exh. C, *Ria R Squared Inc. v. Paul McCown,* Civil Case No. 25-cv-125, *Pl. Compl.*, Dkt. 1, Pg.ID 1-33 (D.Wyo. Jun. 6, 2021); *see also*, Exh. D, *Ria R Squared Inc. v. Paul McCown,* Civil Case No. 25-cv-125, *Def. Ans. and Aff. Def.*, Dkt. 42 (D.Wyo. Jun. 6, 2021).

33. After seizure of the funds referenced above from Defendant's bank, Defendant maintained possession of $23,699.33 of the $375,000 fraudulently

12160803.2

obtained by Paul from R Squared and transferred to Defendant without any consideration.

34. On September 30, 2021, R Squared demanded through counsel that Defendant return the $23,699.33 balance of the $375,000 transferred to him by Paul.

35. Defendant has failed and refused to return that balance to R Squared, thereby denying R Squared the right to use and enjoy that property and impeding R Squared's ability to protect its interests.

36. By reason of the foregoing, R Squared has been and will continue to be damaged in the amount of $23,699.33 plus interest.

## COUNT 3 – STATUTORY CONVERSION UNDER MCL §600.2919a

37. R Squared hereby repeats, re-alleges and incorporates by reference the allegations contained in the paragraphs above.

38. Michigan's statutory conversion statute, MCL §600.2919a ("Recovery of damages, costs, and attorney's fees by person damaged; remedy cumulative"), states, in full, as follows:

> (1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:
>
> (a) Another person's stealing or embezzling property or converting property to the other person's own use.
>
> (b) Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.

12160803.2

(2) The remedy provided by this section is in addition to any other right or remedy the person may have at law or otherwise.

39. Defendant converted and concealed $375,000 of R Squared's money that he received through the fraudulent scheme perpetrated by Paul, his brother.

40. In early summer 2021, the FBI seized $351,300.67 from Defendant's bank where the proceeds of Paul's $375,000 transfer had been held.

41. After seizure of the funds referenced above from Defendant's bank, Defendant wrongfully maintained possession of, and continued to conceal and convert, $23,699.33 of the $375,000 of R Squared's money that was fraudulently obtained by Paul and transferred to Defendant without any consideration.

42. On September 30, 2021, R Squared demanded through counsel that Defendant return the $23,699.33 balance of the $375,000 transferred to him by Paul.

43. Defendant has failed and refused to return that balance to R Squared, thereby denying R Squared the right to use and enjoy that property and impeding R Squared's ability to protect its interests.

44. Defendant continues to possess and conceal the stolen and/or converted funds so that the Defendant may have access to the funds for the Defendant's own use.

45. By reason of the foregoing, R Squared has been and will continue to be damaged in the amount of $71,097.99 (three times $23,699.33) plus interest, costs, and reasonable attorney fees.

46. R Squared's recovery for statutory conversion should be in addition to any other recovery made herein.

## CONCLUSION

**WHEREFORE**, Plaintiff Ria R Squared, Inc. respectfully prays for judgment and damages against Defendant Phillip McCown for a sum of $375,000 for violations of the Michigan Uniform Voidable Transactions Act; $23,699.33 for common law conversion; and $71,097.90 for statutory conversion; and for Plaintiff's costs and reasonable attorneys fees and for any other such relief as the Court deems just and proper as may further the interests of equity and justice.

Dated: December 17, 2021                HEED LAW GROUP, PLLC


/s/ Thomas P. Heed (P66991)
Thomas P. Heed (P66991)
Attorney for Plaintiff
2723 South State Street
Suite 150
Ann Arbor, Michigan 48104
(734) 794-4757
(734) 794-4712
theed@heedlawgroup.com

12160803.2