## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

RIA R SQUARED, INC.

                                                  **Case No.  2:21-cv-12937**
                                                  HON. LINDA V. PARKER

             Plaintiff,

                                                    MAGITRATE JUDGE
      v.                                                CURTIS IVY, JR.

PHILLIP McCOWN,

                                                **TRIAL BY JURY DEMANDED**
             Defendant,

## ANSWER

1.     Plaintiff R Squared sued defendant Phillip McCown ("Defendant") for the return of funds that are rightfully owed to R. Squared.  Those funds were fraudulently obtained from R Squared by Paul McCown ("Paul") – the then-Chief Financial Officer of Wyoming Catholic College and a brother of the Defendant – who transferred $375,000 of his ill-gotten gains to Defendant for no consideration whatsoever.

**ANSWER:  As to the first sentence, Defendant admits that he has been sued by Plaintiff R Squared, and denies the remainder of the sentence. Defendant, on information and belief later obtained after the acts complained of in the Complaint, admits that, "Those funds were fraudulently obtained from R Squared by Paul McCown ('Paul')".  Admitted that at the time of the**

acts complained of in the Complaint, Paul was the "Chief Financial Officer of Wyoming Catholic College and a brother of the Defendant".  Admitted that Defendant received a transfer of $375,000.  Admitted on information and belief later obtained after the acts complained of in the Complaint, that the $375,000 was from "ill-gotten gains".  Denied that the $375,000 was "for no consideration whatsoever", Defendant is a silent shareholder in McCown Enterprises, LLC, and believed that under the November 11, 2020 Operating Agreement, (Exhibit A), that for his contribution of services provided to the company, he was receiving $375,000 resulting from a sale of that Company, a "dividend payment".  See (Exhibit B, March 24, 2021 email).

## THE PARTIES

2.     Plaintiff R Squared is a registered Delaware corporation, in good standing, primarily conducting business out of New York City, New York.

**ANSWER: Defendant relying on his counsel's investigation of public records                    obtained                    at https://icis.corp.delaware.gov/ecorp/entitysearch/namesearch.aspx,  admits that Plaintiff is a registered Delaware corporation, and denies that Plaintiff primarily conducts business out of New York "City", New York, but based on http://rsquaredia.com/contact/ admits that Plaintiff operates out of New York, New York.  See Id.**

3.     Upon information and belief, Defendant is a citizen of Michigan and his last known address is 2576 Locksley Ct., Troy, MI 48083.

**ANSWER: Admitted.**

## JURISDICTION AND VENUE

4.     Jurisdiction is proper pursuant to 28 U.S.C. § 1332 (diversity of citizenship).

**ANSWER:  Admitted to the extent that the citizenship of the parties are diverse and the allegations in the Complaint are in excess of $75,000.**

5.     The amount in controversy in this matter exceeds the sum of $75,000.00.

**ANSWER:  Admitted that the allegations asserted in the Complaint against Defendant are in excess of $75,000.**

6.     Jurisdiction is proper in this District as the Defendant resides in or is deemed to be a resident here.

**ANSWER:  Admitted that Defendant resides in the District.**

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because (i) Defendant resides in or is deemed to be a resident within the Eastern District of Michigan and (ii) a substantial part of the events or omissions giving rise to the claims occurred in this District.

**ANSWER:   Admitted that Defendant resides in the District and a substantial part of the events or omissions giving rise to the claims occurred in this District.**

## THE RELEVANT FACTS

### A.   PAUL MCCOWN'S FRAUD

8.   Upon information and belief, early in 2021 Paul, the then-Chief Financial Officer ("CFO") of Wyoming Catholic College ("WCC"), told his employer that he had become extraordinarily wealthy and wished to make a substantial donation to WCC.

**ANSWER:   Admitted that "early in 2021 Paul [was] the then-Chief Financial Officer of Wyoming Catholic College."  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegation, "[Paul] told his employer that he had become extraordinarily wealthy and wished to make a substantial donation to WCC."**

9.   In March 2021, Paul was introduced to an executive of an investment advisory firm affiliated with plaintiff R Squared.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegation.**

10.   During the introduction, Paul represented that he was seeking advisory

services on behalf of WCC relating to WCC's endowment fund, which was about to receive substantial additional funds (from Paul's promised donation, although he did not explain that at the time).

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegation.**

11.    In March 2021, Paul was introduced to David Kang – the Chief Executive Officer of plaintiff R Squared, a global alternative asset manager, and the President of R Squared's affiliated investment advisory firm – in connection with providing advisory services to WCC.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegation.**

12.    Later in March 2021, Paul advised Kang that he had amassed substantial personal wealth and was also seeking investment advisory services on his own behalf.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegation.**

13.    That same month, Paul provided R Squared with various bank statements purportedly from Wyoming Community Bank in Lander and US Bank in Minneapolis. Those statements purported to show that Paul had hundreds of millions of dollars, including a purported balance of $750,323,282 in his Wyoming

Community Bank account.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegation.**

14.    In the ensuing weeks, R Squared received various documents purportedly executed by Wyoming Community Bank Vice President and Branch Manager Kendall Hayford, from the email address khayford@wyocommunityb.com. Those documents included, among others, a Deposit Account Control Agreement and two "attestation" forms apparently on Wyoming Community Bank letterhead verifying the account balance in Paul's account.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegation.**

15.    Shortly thereafter, Paul requested that R Squared loan his entity, McCown Enterprises, LLC, $15 million to alleviate a temporary cash-flow issue. In order to nurture the relationship with WCC formed through Paul, and based upon Paul's financial documentation, R Squared agreed to loan $15 million to McCown Enterprises.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegation.**

16.    On May 10, 2021, Paul executed a Promissory Note and Security

Agreement on behalf of McCown Enterprises, LLC for the $15 million loan.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegation.**

17.   On May 11, 2021, R Squared wired a total of $14.7 million (the $15 million loan amount less an origination fee) in accordance with wire instructions provided by Paul.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegation.**

18.   Shortly after funding the loan, R Squared learned that the bank statements provided by Paul, as well as the attestations and Deposit Account Control Agreement purportedly signed by Wyoming Community Bank Vice President Hayford, were forged, inaccurate and fraudulent. Indeed the President of Wyoming Community Bank affirmed that the bank statements were "not true and correct statements" and were "forgeries" and that the attestations were "false" and did not "accurately reflect the bank's records." (*Affidavit of Scott Estep* attached hereto as Exh. A). Further, Kendall Hayford, the Vice President of the branch who purportedly signed the documents, affirmed that he "had never seen any of the documents" and the signatures were forged. (*Affidavit of Kendall Hayford* attached hereto as Exh. B).

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegation.**

**B.**     **DEFENDANT'S RECEIPT OF $375,000 FRAUDULENTLY OBTAINED FROM R SQUARED**

19.     On or about May 11, 2021, Paul transferred the majority of the $14.7 million out of his business's account at Wyoming Community Bank. Specifically, Paul made numerous transfers, including but not limited to transferring $375,000 to Defendant, his brother.

**ANSWER:   Defendant admits only that he received a transfer of $375,000 caused by Paul.   As to the remainder of the allegations, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegation.**

20.     Defendant gave no consideration for the $375,000 that he received fromPaul's fraudulently obtained funds.

**ANSWER:   Denied, Defendant is a silent shareholder in McCown Enterprises, LLC, and believed that under the November 11, 2020 Operating Agreement, (Exhibit A), that for his contribution of services provided to the company, he was receiving $375,000 resulting from a sale of that Company, a "dividend payment".  See (Exhibit B, March 24, 2021 email).**

**COUNT 1 - UNIFORM VOIDABLE TRANSACTION ACT, MCL §566.34**

21.     R Squared hereby repeats, re-alleges and incorporates by reference the allegations contained in the paragraphs above.

**ANSWER:   Defendant incorporates his denials, admissions, and statements of a lack knowledge or information sufficient to form a belief about the truth of the allegation as asserted above.**

22.    The Michigan Uniform Voidable Transaction Act, MCL §566.34 ("Transfer with intent to defraud"), states, in pertinent part, as follows:

> (1) …[a] transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following circumstances:
>
> > (a) With actual intent to hinder, delay or defraud any creditor of the debtor.
> > (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor did either of the following:
> > > (i) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> > > (ii) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

**ANSWER:  Defendant, admits that the portion of MCL 556.34 quoted above is correct.**

23.    On or about May 11, 2021, Paul fraudulently obtained $14.7 million from R Squared as set forth above.

**ANSWER:  Defendant, on information and belief later obtained after the acts complained of in the Complaint, admits this paragraph.**

9

24.     On or about May 11, 2021, Paul, with the intent to hinder, delay or defraud R Squared, transferred $375,000 of the $14.7 million to his brother, the Defendant.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegation as to whether Paul had the "intent to hinder, delay or defraud R Squared" or the amount of "$14.7 million", further stating Defendant is a silent shareholder in McCown Enterprises, LLC, and believed that under the November 11, 2020 Operating Agreement, (Exhibit A), that for his contribution of services provided to the company, he was receiving $375,000 resulting from a sale of that Company, a "dividend payment".  See (Exhibit B, March 24, 2021 email), the amount of $375,000 received is admitted.**

25.     Defendant gave no consideration for the $375,000 that he received from his brother Paul.

**ANSWER:   Denied, Defendant is a silent shareholder in McCown Enterprises, LLC, and believed that under the November 11, 2020 Operating Agreement, (Exhibit A), that for his contribution of services provided to the company, he was receiving $375,000 resulting from a sale of that Company, a "dividend payment".  See (Exhibit B, March 24, 2021 email).**

26.     At the time Paul sent $375,000 to Defendant, Paul's remaining assets,

if any, were unreasonably small in relation to the $375,000 transferred, and he believed or reasonably should have believed that he would incur debts beyond his ability to pay as they became due.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegation.**

27.    By reason of the foregoing, the $375,000 transfer from Paul to his brother, the Defendant, is voidable under the Michigan Uniform Voidable Transactions Act and R Squared was, and continues to be, damaged as a result thereof.

**ANSWER: Denied.**

28.    Defendant's liability for damages to R Squared arising out of the Michigan Uniform Voidable Transactions Act is presently in the amount of $375,000 plus interest, and the Court's award should be in that amount. While R Squared hopes and expects that the funds seized from Defendant by the FBI (as well as other proceeds of the fraudulently-obtained $14.7 million transferred elsewhere by Paul) will be turned over to R Squared if Paul is convicted as a result of the government's investigation of his fraudulent activities described above, there can be no assurance that R Squared will receive those funds, or when that might happen if it does happen. Should R Squared receive from the United States government any or all of the $351,300.67 seized from Defendant, of course that

will be credited against damages owed to R Squared by Defendant, or will be returned to him, as plaintiff is not seeking double recovery of the $375,000 fraudulently obtained by Paul and transferred by him to Defendant without consideration.

**ANSWER:  First sentence, Denied.  Second sentence, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegation.   Third sentence, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegation that, "Should R Squared receive from the United States government any or all of the $351,300.67 seized from Defendant, of course that will be credited against damages owed to R Squared by Defendant, or will be returned to him[.]" Third sentence, "plaintiff is not seeking double recovery of the $375,000" is denied as Plaintiff is seeking those exact same monies as part of the lawsuit captioned _Ria R Squared, Inc., v. Paul D. McCown, and McCown Enterprises, LLC,_ 21-cv-125-S (D. Wy.), a case in which Plaintiff has already moved "for partial summary judgment regarding [Paul D. McCown, and McCown Enterprises, LLC] liability for the claim of fraud and the inducement and intentional misrepresentation" requesting an award of a sum certain of "$14.7 million in damages." (Exhibit C).  Third sentence, "fraudulently obtained by Paul", Defendant, on information and belief later obtained after the acts**

complained of in the Complaint, admits that, the subject funds of this lawsuit were "fraudulently obtained by Paul".   Third sentence, as to the allegation, "transferred by [Paul] to Defendant without consideration" is denied, Defendant is a silent shareholder in McCown Enterprises, LLC, and believed that under the November 11, 2020 Operating Agreement, (Exhibit A), that for his contribution of services provided to the company, he was receiving $375,000 resulting from a sale of that Company, a "dividend payment".   See (Exhibit B, March 24, 2021 email).

### COUNT 2 – COMMON LAW CONVERSION

29.    R Squared hereby repeats, re-alleges and incorporates by reference the allegations contained in the paragraphs above.

**ANSWER:    Defendant incorporates his denials, admissions, and statements of a lack knowledge or information sufficient to form a belief about the truth of the allegation as asserted above.**

30.    Defendant is currently exercising wrongful dominion over at least $23,699.33 of R Squared's money that he obtained through the fraudulent scheme perpetrated by Paul.

**ANSWER:    Denied, Defendant through Defendant's counsel, Mr. Evanchek, attempted to make arrangements to return the $23,699.33 with Steven Popofsky of Kleinberg, Kaplan, Wolff & Cohen, P.C. 500 Fifth Ave.,**

**New York, New York 10110, acting on Plaintiff's behalf[1], but Mr. Popofsky**

**stated in part that Defendant, "can offer to buy a release from any wider**

**liability by paying a real sum of money – beyond the $21,000 that is clearly**

**owed", (Exhibit D), and after Mr. Warner's February 7, 2022, conversation**

**with counsel whom has appeared in this case for Defendant, Mr. Heed, who**

**stated for the first time that the conversion claims (both common law and**

**statutory) asserted in this lawsuit were solely based upon Defendant asking for**

**a full release in conjunction with tendering the funds, see (Exhibit E),**

**Defendant caused the amount of $23,699.33 that was in his attorney's ILOTA**

**account to be sent to Defendant's counsel.  (Exhibit F).**

31.    In early summer 2021, the FBI seized $351,300.67 from Defendant's

bank where the proceeds of Paul's $375,000 transfer had been held.

**ANSWER:  Admitted that the FBI seized $351,300.67 from Defendant's**

**bank account where the $375,000 had been transferred, further stating that**

**the date was near June 20, 2021.**

32.    R Squared filed suit against Paul in June 2021 and in his answer to R

Squared's complaint, Paul invoked the Fifth Amendment in response to nearly every

---

**[1]  Mr. Popofsky has oddly not filed an appearance in this case, even though a non-Michigan licensed attorney by that same name was admitted to practice before this Court on August 4, 2016, according to the Court's website.**

single substantive allegation, including those contained in the paragraphs above. See

Exh. C, Ria R Squared Inc. v. Paul McCown, Civil Case No. 25-cv-125, Pl. Compl.,

Dkt. 1, Pg.ID 1-33 (D.Wyo. Jun. 6, 2021); see also, Exh. D, Ria R Squared Inc. v.

Paul McCown, Civil Case No. 25-cv-125, Def. Ans. and Aff. Def., Dkt. 42 (D.Wyo.

Jun. 6, 2021).

**ANSWER:   Assuming that Plaintiff meant 21-cv-125 not "25"-cv-125,**
**admitted in part, but denied in part in that "those contained in the paragraphs**
**above" asserted in this case were not contained in 21-cv-125 (D. Wy.) matter.**

33.   After seizure of the funds referenced above from Defendant's bank,
Defendant maintained possession of $23,699.33 of the $375,000 fraudulently
obtained by Paul from R Squared and transferred to Defendant without any
consideration.

**ANSWER:   Denied, Defendant through Defendant's counsel, Mr.**
**Evanchek, attempted to make arrangements to return the $23,699.33 with**
**Steven Popofsky of Kleinberg, Kaplan, Wolff & Cohen, P.C. 500 Fifth Ave.,**
**New York, New York 10110, acting on Plaintiff's behalf, but Mr. Popofsky**
**stated in part that Defendant, "can offer to buy a release from any wider**
**liability by paying a real sum of money – beyond the $21,000 that is clearly**
**owed", (Exhibit D), and after Mr. Warner's February 7, 2022, conversation**
**with counsel whom has appeared in this case for Defendant, Mr. Heed, who**

**stated for the first time that the conversion claims (both common law and statutory) asserted in this lawsuit were solely based upon Defendant asking for a full release in conjunction with tendering the funds, see (Exhibit E), Defendant caused the amount of $23,699.33 that was in his attorney's ILOTA account to be sent to Defendant's counsel. (Exhibit F). As to the phrase, "fraudulently obtained by Paul from R Squared", Defendant, on information and belief later obtained after the acts complained of in the Complaint, admits that the subject funds of this lawsuit were "fraudulently obtained by Paul". Denied, as to the allegation, "transferred to Defendant without any consideration" as Defendant is a silent shareholder in McCown Enterprises, LLC, and believed that under the November 11, 2020 Operating Agreement, (Exhibit A), that for his contribution of services provided to the company, he was receiving $375,000 resulting from a sale of that Company, a "dividend payment". See (Exhibit B, March 24, 2021 email).**

34.     On September 30, 2021, R Squared demanded through counsel that Defendant return the $23,699.33 balance of the $375,000 transferred to him by Paul.

**ANSWER: Admitted.**

35.     Defendant has failed and refused to return that balance to R Squared, thereby denying R Squared the right to use and enjoy that property and impeding R Squared's ability to protect its interests.

**ANSWER: Denied, Defendant through Defendant's counsel, Mr. Evanchek, attempted to make arrangements to return the $23,699.33 with Steven Popofsky of Kleinberg, Kaplan, Wolff & Cohen, P.C. 500 Fifth Ave., New York, New York 10110, acting on Plaintiff's behalf, but Mr. Popofsky stated in part that Defendant, "can offer to buy a release from any wider liability by paying a real sum of money – beyond the $21,000 that is clearly owed", (Exhibit D), and after Mr. Warner's February 7, 2022, conversation with counsel whom has appeared in this case for Defendant, Mr. Heed, who stated for the first time that the conversion claims (both common law and statutory) asserted in this lawsuit were solely based upon Defendant asking for a full release in conjunction with tendering the funds, see (Exhibit E), Defendant caused the amount of $23,699.33 that was in his attorney's ILOTA account to be sent to Defendant's counsel. (Exhibit F).**

36.    By reason of the foregoing, R Squared has been and will continue to be damaged in the amount of $23,699.33 plus interest.

**ANSWER:   Denied, Defendant through Defendant's counsel, Mr. Evanchek, attempted to make arrangements to return the $23,699.33 with Steven Popofsky of Kleinberg, Kaplan, Wolff & Cohen, P.C. 500 Fifth Ave., New York, New York 10110, acting on Plaintiff's behalf, but Mr. Popofsky stated in part that Defendant, "can offer to buy a release from any wider**

liability by paying a real sum of money – beyond the $21,000 that is clearly owed", (Exhibit D), and after Mr. Warner's February 7, 2022, conversation with counsel whom has appeared in this case for Defendant, Mr. Heed, who stated for the first time that the conversion claims (both common law and statutory) asserted in this lawsuit were solely based upon Defendant asking for a full release in conjunction with tendering the funds, see (Exhibit E), Defendant caused the amount of $23,699.33 that was in his attorney's ILOTA account to be sent to Defendant's counsel. (Exhibit F).

## COUNT 3 – STATUTORY CONVERSION UNDER MCL §600.2919a

37. R Squared hereby repeats, re-alleges and incorporates by reference the allegations contained in the paragraphs above.

**ANSWER: Defendant incorporates his denials, admissions, and statements of a lack knowledge or information sufficient to form a belief about the truth of the allegation as asserted above.**

38. Michigan's statutory conversion statute, MCL §600.2919a ("Recovery of damages, costs, and attorney's fees by person damaged; remedy cumulative"), states, in full, as follows:

> (1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:
> (a) Another person's stealing or embezzling property or converting property to the other person's own use.

(b) Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.

(2) The remedy provided by this section is in addition to any other right or remedy the person may have at law or otherwise.

**ANSWER:   Defendant, admits that MCL 600.2919a quoted above is correct.**

39.     Defendant converted and concealed $375,000 of R Squared's money that he received through the fraudulent scheme perpetrated by Paul, his brother.

**ANSWER:  Denied, and this allegation is sanctionable under Rule 11 as Plaintiff in paragraph 40, *infa*, alleges that, "the FBI seized $351,300.67 from Defendant's bank where the proceeds of Paul's $375,000 transfer had been held".   Denied, Defendant through Defendant's counsel, Mr. Evanchek, attempted to make arrangements to return the $23,699.33 with Steven Popofsky of Kleinberg, Kaplan, Wolff & Cohen, P.C. 500 Fifth Ave., New York, New York 10110, acting on Plaintiff's behalf, but Mr. Popofsky stated in part that Defendant, "can offer to buy a release from any wider liability by paying a real sum of money – beyond the $21,000 that is clearly owed", (Exhibit D), and after Mr. Warner's February 7, 2022, conversation with counsel whom has appeared in this case for Defendant, Mr. Heed, who stated for the first time that the conversion claims (both common law and statutory) asserted in this lawsuit were solely based upon Defendant asking for a full release in conjunction with**

tendering the funds, see (Exhibit E), Defendant caused the amount of **$23,699.33 that was in his attorney's ILOTA account to be sent to Defendant's counsel.  (Exhibit F).  As to the phrase, "fraudulently obtained by Paul from R Squared", Defendant, on information and belief later obtained after the acts complained of in the Complaint, admits that, the subject funds of this lawsuit were "fraudulently obtained by Paul".**

40.     In early summer 2021, the FBI seized $351,300.67 from Defendant's bank where the proceeds of Paul's $375,000 transfer had been held.

**ANSWER:  Admitted that the FBI seized $351,300.67 from Defendant's bank account where the $375,000 had been transferred, further stating that the date was near June 20, 2021.**

41.     After seizure of the funds referenced above from Defendant's bank, Defendant wrongfully maintained possession of, and continued to conceal and convert, $23,699.33 of the $375,000 of R Squared's money that was fraudulently obtained by Paul and transferred to Defendant without any consideration.

**ANSWER:   Denied, Defendant through Defendant's counsel, Mr. Evanchek, attempted to make arrangements to return the $23,699.33 with Steven Popofsky of Kleinberg, Kaplan, Wolff & Cohen, P.C. 500 Fifth Ave., New York, New York 10110, acting on Plaintiff's behalf, but Mr. Popofsky stated in part that Defendant, "can offer to buy a release from any wider**

liability by paying a real sum of money – beyond the $21,000 that is clearly owed", (Exhibit D), and after Mr. Warner's February 7, 2022, conversation with counsel whom has appeared in this case for Defendant, Mr. Heed, who stated for the first time that the conversion claims (both common law and statutory) asserted in this lawsuit were solely based upon Defendant asking for a full release in conjunction with tendering the funds, see (Exhibit E), Defendant caused the amount of $23,699.33 that was in his attorney's ILOTA account to be sent to Defendant's counsel.  (Exhibit F).  As to the phrase, "fraudulently obtained by Paul from R Squared", Defendant, on information and belief later obtained after the acts complained of in the Complaint, admits that, the subject funds of this lawsuit were "fraudulently obtained by Paul". Denied, as to the allegation, "transferred to Defendant without any consideration" as Defendant is a silent shareholder in McCown Enterprises, LLC, and believed that under the November 11, 2020 Operating Agreement, (Exhibit A), that for his contribution of services provided to the company, he was receiving $375,000 resulting from a sale of that Company, a "dividend payment".  See (Exhibit B, March 24, 2021 email).

42.    On September 30, 2021, R Squared demanded through counsel that Defendant return the $23,699.33 balance of the $375,000 transferred to him by Paul.

**ANSWER:  Admitted.**

43.     Defendant has failed and refused to return that balance to R Squared, thereby denying R Squared the right to use and enjoy that property and impeding R Squared's ability to protect its interests.

**ANSWER: Denied, Defendant through Defendant's counsel, Mr. Evanchek, attempted to make arrangements to return the $23,699.33 with Steven Popofsky of Kleinberg, Kaplan, Wolff & Cohen, P.C. 500 Fifth Ave., New York, New York 10110, acting on Plaintiff's behalf, but Mr. Popofsky stated in part that Defendant, "can offer to buy a release from any wider liability by paying a real sum of money – beyond the $21,000 that is clearly owed", (Exhibit D), and after Mr. Warner's February 7, 2022, conversation with counsel whom has appeared in this case for Defendant, Mr. Heed, who stated for the first time that the conversion claims (both common law and statutory) asserted in this lawsuit were solely based upon Defendant asking for a full release in conjunction with tendering the funds, see (Exhibit E), Defendant caused the amount of $23,699.33 that was in his attorney's ILOTA account to be sent to Defendant's counsel.  (Exhibit F).**

44.     Defendant continues to possess and conceal the stolen and/or converted funds so that the Defendant may have access to the funds for the Defendant's own use.

**ANSWER: Denied, after Mr. Warner's February 7, 2022, conversation with counsel whom has appeared in this case for Defendant, Mr. Heed, who stated for the first time that the conversion claims (both common law and statutory) asserted in this lawsuit were solely based upon Defendant asking for a full release in conjunction with tendering the funds, see (Exhibit E), Defendant caused the amount of $23,699.33 that was in his attorney's ILOTA account to be sent to Defendant's counsel.  (Exhibit F).  The $23,699.33 was placed in the US Mail on February 8, 2021.  See (Exhibit G).**

45.    By reason of the foregoing, R Squared has been and will continue to be damaged in the amount of $71,097.99 (three times $23,699.33) plus interest, costs, and reasonable attorney fees.

**ANSWER:  Denied, after Mr. Warner's February 7, 2022, conversation with counsel whom has appeared in this case for Defendant, Mr. Heed, who stated for the first time that the conversion claims (both common law and statutory) asserted in this lawsuit were solely based upon Defendant asking for a full release in conjunction with tendering the funds, see (Exhibit D), Defendant caused the amount of $23,699.33 that was in his attorney's ILOTA account to be sent to Defendant's counsel.  (Exhibit E).  The $23,699.33 was placed in the US Mail on February 8, 2021.  See (Exhibit G).**

46.     R Squared's recovery for statutory conversion should be in addition to any other recovery made herein.

**ANSWER: Denied.**

## AFFIRMATIVE DEFENSES

1.     Plaintiff's claims are barred by payment.

2.     Plaintiff's claims are barred by contributory negligence in that it was grossly negligent not to conduct due diligence prior to funding a $15 million dollar loan and sending $14.7 million to Paul D. McCown.

3.     Plaintiff's claims are barred because Plaintiff voluntarily transferred $14.7 million to Paul D. McCown.

4.     Defendant received $375,000 in good faith, without the knowledge of Paul D. McCown's actions as alleged in Plaintiff's Complaint and is a good faith transferee of those funds.

5.     Plaintiff is seeking duplicative claims in that it is seeking the same $375,000 as part of the damages it is seeking *Ria R Squared, Inc., v. Paul D. McCown, and McCown Enterprises, LLC*, 21-cv-125-S (D. Wy.), and therefore should be barred from a double recovery.

6.     Plaintiff has failed to join the United States of America as a party to this lawsuit, whom it acknowledges is the holder of and in possession of $351,300.67 of the $375,000 that was transferred to Defendant's bank account, and the failure to

join the United States of America is inequitable in that it could result in a windfall for Plaintiff.

7.     Plaintiff cannot be liable under any claim for funds seized from him by the Federal Bureau of Investigation, as to the extent those funds are not available to Plaintiff, such unavailability is not the result of any action by Defendant.

8.     Defendant is acting with unclean hands, selectively suing some, but not all persons and entities that received monies from the $14.7 million loan, including not suing or believed to not have received monies back, $500,000 provided to Goldman Sachs, and $750,000 provided to Paul Alarcon, and not suing the United States of America even though it is in possession of $351,300.67 that Plaintiff claims are its monies.

## PRARYER FOR RELIEF

**WHEREFORE,** Defendant requests this Honorable Court to enter judgment for Defendant finding of no liability to Plaintiff and to award Defendant his reasonable attorney's fees and costs under this Court's inherent authority.   See *Chambers v NASCO*, Inc., 501 U.S. 32, 43; 111 S. Ct. 2123; 115 L. Ed. 2d 27 (1991).

Respectfully submitted,
/s/ Curtis C. Warner

| | |
|---|---|
| Curtis C. Warner (P59915) | John A. Evanchek (P66157) |
| 5 E. Market St. | KELLEY & EVANCHEK, P.C. |
| Suit 250 | 43695 Michigan Ave. |
| Corning, NY 14830 | Canton, MI 48188-2516 |
| Tel: /FAX (888) 551-8685 | Tel: (734) 397-4540 |

cwarner@warner.legal                    FAX: (734) 397-4567
                                        john@kelawpc.com

## JURY DEMAND

**PLEASE  TAKE  NOTICE** that pursuant to Rule 38 Defendant hereby

demands a trial by jury on Plaintiff's claims against him.

Respectfully submitted,
/s/ Curtis C. Warner

Curtis C. Warner (P59915)              John A. Evanchek (P66157)
5 E. Market St.                        KELLEY & EVANCHEK, P.C.
Suit 250                               43695 Michigan Ave.
Corning, NY 14830                      Canton, MI 48188-2516
Tel: /FAX (888) 551-8685               Tel: (734) 397-4540
cwarner@warner.legal                   FAX: (734) 397-4567
                                       john@kelawpc.com

## CERTIFICATE OF SERVICE

I hereby certify that on **February 8, 2022**, I filed electronically the foregoing **Answer, Affirmative Defenses, Jury Demand** with the Court using the Court's ECF system, which will automatically send notice to all counsel of record that has so appeared:

Thomas P. Heed
Heed Law Group PLLC
39555 Orchard Hill Place
Suite 600
Novi, MI 48375
(248) 465-8655
theed@heedlawgroup.com

Respectfully submitted,
/s/ Curtis C. Warner

Curtis C. Warner (P59915)          John A. Evanchek (P66157)
5 E. Market St.                    KELLEY & EVANCHEK, P.C.
Suit 250                           43695 Michigan Ave.
Corning, NY 14830                  Canton, MI 48188-2516
Tel: /FAX (888) 551-8685           Tel: (734) 397-4540
cwarner@warner.legal               FAX: (734) 397-4567
john@kelawpc.com