UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RIA R SQUARED, INC.,                    Case No. 21-12937
                          Plaintiff,

v.

                                        Curtis Ivy, Jr.
PHILLIP MCCOWN,                         United States Magistrate Judge
                          Defendant.
_____/

## ORDER GRANTING IN PART MOTION TO COMPEL (ECF No. 25), DENYING MOTION TO QUASH (ECF No. 32), DENYING MOTION FOR ORDER (ECF No. 34), GRANTING IN PART MOTION TO COMPEL DEPOSITIONS (ECF No. 41), AND GRANTING MOTION FOR LEAVE TO FILE SUR-REPLY (ECF No. 44)

Plaintiff sued Defendant Phillip McCown in connection with monies Defendant was given by his brother, Paul McCown. Plaintiff maintains the funds related to a fraudulently obtained loan to Paul. Following criminal and civil litigation in Wyoming, in connection with the fraudulent activity, Paul is incarcerated. Relevant here, Paul transferred $375,000 of the fraudulent $15 million to Defendant. The Federal Bureau of Investigation seized $351,300.67 from Defendant's bank. The FBI did not seize the remaining $23,699.33 because Defendant had spent it. Eight months after the FBI seized the money, and after this case was filed, Defendant returned the remaining amount to Plaintiff. Plaintiff sues Defendant for common law and statutory conversion.

Before the Court are two discovery motions: Defendant Phillip McCown's

motion to compel (ECF No. 25) and motion to quash a subpoena directed to

McCown's employer (ECF No. 32).  The Court heard oral argument on these

motions on December 13, 2022.  The parties submitted supplemental briefing on

the motion to compel at the Court's direction.  (ECF Nos. 50, 51).  This Order also

addresses Defendant's motion for order and to compel depositions (ECF Nos. 34,

41) and Plaintiff's motion for leave to file a sur-reply (ECF No. 44).

A.     Motion to Compel (ECF No. 25)

This dispute began with the question of when discovery commenced.

Defendant's initial position was that Plaintiff must be ordered to respond to

discovery without objection because discovery responses were past due.

Defendant argued that discovery began when the District Judge set a scheduling

conference during July 2022.  Plaintiff's position is that discovery did not start

until the Court entered the case management order during October 2022, and thus

responses were not due until 30 days later.

By way of background, on July 12, 2022, the District Judge initially

assigned to this case entered a notice of appearance for a scheduling conference to

occur on August 11, 2022.  (ECF No. 16).  Among other things, that notice

directed the parties to conduct discovery before the conference.  On August 5,

2022, the parties engaged in a telephonic Rule 26(f) conference in preparation for

the scheduling conference with the Court. That telephone conversation lasted seven minutes, abruptly ending when Defendant's counsel terminated what became a contentious call. (ECF No. 27, PageID.389).

In Plaintiff's perspective, that Rule 26(f) conversation between the parties was unfinished. After the August 11, 2022, scheduling conference with the Court, the District Judge did not issue a scheduling order, but referred the matter to the undersigned on the parties' consent. (ECF No. 23). Defendant served his discovery requests that day.

On September 22, 2022, more than 30 days after service of the discovery requests, Plaintiff responded to the document requests with objections; it did not respond to the interrogatories. Defendant argues that, based on Plaintiff's failure to timely respond to the discovery requests, it has waived all objections to the requests. He contends that there is no good cause for Plaintiff's untimeliness. (ECF No. 25, PageID.308-09). He moved to compel responses to the discovery.

Plaintiff argues that discovery did not commence until the Court's Rule 26(f) scheduling conference on October 5, 2022, because the parties' call on August 5, 2022, was not completed and the Court did not issue a scheduling order on August 11, 2022, indicating that the parties had yet to conduct a Rule 26(f) conference. Plaintiff insists responses to discovery are not due until 30 days after that

conference, not within 30 days of service of Defendant's August discovery requests.

The parties have differing views on when their obligations to engage in discovery began.  Rule 26(d)(1) states that the parties may not seek discovery until they have conferred as required by Rule 26(f) or by court order.  While the language in the notice to appear typically is sufficient to commence the discovery period, given the contentious nature of the parties' relationship and the abrupt end to their Rule 26(f) discussion, both of their positions here are reasonable.

Defendant asserts that Plaintiff's November 7, 2022, supplemental responses and objections in response to an October 24, 2022, letter narrowing the requests are untimely, thus those objections should be deemed waived.  (ECF No. 50, PageID.1724).

Based on the Court's discretion to dictate the sequence of discovery, the Court will not consider discovery responses untimely or objections waived.  The motion to compel with regard to the timeliness of Plaintiff's responses is **DENIED**.  Objections will be not considered waived.

What remains are Defendant's requests for production of documents.  Parties may obtain discovery related to any nonprivileged matter relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the

parties' relative access to relevant information, the parties' resources, the

importance of the discovery in resolving the issues, and whether the burden or

expense of the proposed discovery outweighs its likely benefit.  Fed. R. Civ. P. 26.

Information within this scope of discovery need not be admissible in evidence to

be discoverable.  *Id.*  "Although a [party] should not be denied access to

information necessary to establish her claim, neither may a [party] be permitted to

'go fishing,' and a trial court retains discretion to determine that a discovery

request is too broad and oppressive."  *Superior Prod. P'ship v. Gordon Auto Body*

*Parts Co.*, 784 F.3d 311, 320-21 (6th Cir. 2015) (citing *Surles ex rel. Johnson v.*

*Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)).  A party seeking

discovery may move for an order compelling an answer, designation, production,

or inspection.  Fed. R. Civ. P. 37.

In Plaintiff's response brief, it explained that it served limited responses to

the requests for production of documents.  (ECF No. 27, PageID.401).  Plaintiff

argued that the purpose of the discovery requests was to harass Plaintiff and raise

the cost of litigation, and that the requests sought irrelevant information.  The

parties addressed Plaintiff's' responses at the hearing and in supplemental briefing.

In the reply to the motion to compel, Defendant asserted that the discovery is

relevant to his defense that he is an innocent recipient of the subject funds and to

his potentially seeking sanctions against Plaintiff under 28 U.S.C. § 1927, which

provides for sanctions against an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously" by filing this lawsuit. (ECF No. 28, PageID.481).

The discovery at issue are three requests for production of documents (requests 3, 4, and 5), expanded on or broken down in more detail in 34 requests as set forth in a November 17, 2022, letter from Defendant to Plaintiff. (*See* ECF No. 50-2, PageID.1748-52). The requests are now stated in 11 parts. (ECF No. 50). Many requests seek documents that refer to or relate to communications involving Steven Popofsky, Plaintiff's counsel in the Wyoming case against Defendant's brother, the man convicted of fraud. Mr. Popofsky has been involved in this case through discussions with Plaintiff's counsel but has not made an appearance. Defendants seek communications involving Popofsky, specifically

- communications indicating it was Plaintiff's intent to dismiss this case after receiving funds seized by the United States from Defendant,

- communications that contain facts that Plaintiff will rely on against Defendant,

- communications that contain facts demonstrating Defendant had no knowledge of his brother's fraud,

- communications that contain facts demonstrating Defendant had knowledge of his brother's actions as alleged in the complaint before June 17, 2021,

- communications involving Popofsky and the Federal Bureau of Investigation related to Defendant, his brother, and McCown

6

Enterprises, LLC,

- communications involving Popofsky and FBI Special Agent Jennifer McGrath related to Defendant's brother and McCown Enterprises, LLC,

- communications involving Popofsky and Kendall Hayford or Hayford's legal counsel relating or referring to Defendant, his brother, or McCown Enterprises.

Defendant also seeks documents related to or referring to the factual or legal basis for the decision to not sue any other person in receipt of funds from Paul McCown.

Before addressing each request, it is noteworthy that neither party cited authority in support of their positions for and against each request. The Court does not craft arguments for the parties, and where neither cites supporting cases, it puts the Court in the position of making presumptions about arguments.

Plaintiff characterizes all the requests as impermissibly seeking either disclosure of its litigation strategy or privileged attorney communications and are irrelevant to whether Defendant unlawfully converted Plaintiff's funds. Defendant asserts the requests are relevant and where privilege is asserted, Plaintiff needed to submit a privilege log.

As to the requests for communications about Plaintiff's intent to dismiss this case and decision not to sue others, Defendant contends that the information is relevant to his claim for sanctions under 28 U.S.C. § 1927 and a Rule 11, which has not yet been filed. In the Court's view, this is an attempt by Defendant to

7

obtain information on Plaintiff's litigation strategy. Litigation strategy generally is considered protected attorney work product. The doctrine, as stated in Fed. R. Civ. P. 26(b)(3), states that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." The scope of work product protection extends to information that could disclose a legal strategy or theory. *See, e.g.*, *Taylor v. Temple & Cutler*, 192 F.R.D. 552, 563 (E.D. Mich. 1999) (addressee name and address on letter "was developed by . . . counsel, and reveals mental processes and legal theories developed in anticipation of litigation, and is therefore protected by the work product doctrine."). On the facts and arguments presented, the Court concludes that Defendant's request for communications with Plaintiff's former attorney about a decision whether to settle this case and about the decision not sue others seeks litigation theory or strategy, and thus cannot be compelled. The motion is **DENIED** as to these requests.

Next are the three requests seeking facts that Plaintiff will rely on and that bear on whether Defendant was aware of his brother's fraudulent conduct.

First, relevance must be addressed. The request for facts on which Defendant will rely, in general, is relevant. The requests for facts demonstrating that Defendant did and did not know of his brother's fraud are relevant, but the scope is narrow considering the claims asserted. Defendant's knowledge of the

fraud is relevant to the statutory conversion claim asserted in Count 3 of the complaint.  Plaintiff alleges that, "[a]fter seizure of the [$351,300.67] from Defendant's bank, Defendant wrongfully maintained possession of, and continued to conceal and convert, $23,699.33 of the $375,000 of R Squared's money that was fraudulently obtained by Paul and transferred to Defendant without any consideration." (ECF No. 1, PageID.10, ¶ 41).  Based on the complaint, the claim begins at the point that the FBI seized funds from Defendant during June 2021.  His knowledge of fraud before then, if any, is irrelevant to the claim.

The Court will order some production of documents here, but a few background principles applicable to all three requests will be addressed first.

Plaintiff argues that seeking this information through documents related to or referring to communications involving former counsel is seeking privileged communications.  (ECF No. 51, PageID.1801).  Defendant insists that Plaintiff was required to submit a privilege log so that he can determine whether the documents are actually privileged.  (ECF No. 50, PageID.1737-38).  Defendant points to an email in which Plaintiff's counsel copied Defendant's brother during the Wyoming litigation.  He asserts this email waives attorney-client privilege, presumably as to any other emails about this case.  As to that email, Defendant is correct that no attorney-client privilege would attach since Paul McCown was copied on the email as a third party.  *K & S Assocs., Inc. v. Am. Ass'n of Physicists in Med.*, 2011 WL

9

249361, at *2 (M.D. Tenn. Jan. 26, 2011) (citing *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999)). But that does not extend to other emails containing attorney-client communications not divulged to a third party.

It is unclear whether every possible responsive document would be entitled to the privilege. Some communications could contain only facts, which would not be protected. Without a privilege log, however, it is impossible to tell exactly what kind of documents are being withheld.

The Court will order Plaintiff to submit a privilege log for discovery responses, as limited below. The parties are reminded that the attorney-client doctrine protects opinions, conclusions, and recommendations based on facts, but not the facts which led to those conclusions. *See Iafrate v. Warner Norcross & Judd, LLP*, 335 F.R.D. 378, 386 (E.D. Mich. 2020). The requests seek facts. To the extent that Defendant seeks more than facts, he must revisit his requests and narrow them. Plaintiff must undertake a good faith search of relevant communications and withhold only those that contain opinion, conclusions, or recommendations.

The Court agrees with Plaintiff that the requests for documents that "refer to or relate to communications involving Popofsky" is vague and overbroad and likely to capture nearly every document in Popofsky's litigation file related to this case. The parties did not address potential compromises. As it appears Defendant

is attempting to get communications in which Popofsky was involved as a participant, without addressing any potential privileged communications, the Court limits these requests to communications (email, mail (i.e., letters)) sent to, received from, or copying Steven Popofsky.

Now, as to the substance and relevance of the requests, the following applies. The request for facts on which Plaintiff will rely is relevant as stated. The request for facts demonstrating that Defendant knew nothing about his brother's fraud is relevant from the point when the FBI seized Defendant's funds. Plaintiff essentially contends that this discovery is pointless because it is impossible that Defendant would not have had knowledge at the point when the FBI seized the funds. That said, Defendant's knowledge is relevant at that point onward, so the motion is **GRANTED IN PART** for facts demonstrating Defendant did not know of his brother's fraud from June 2021 onward. The request for facts demonstrating he had knowledge on or before the seizure is not relevant. The motion is **DENIED IN PART** as to that request.

Plaintiff is **ordered** to serve a privilege log related to granted requests for production of documents on Defendant **within 21 days** of this Order.

The last three requests are for documents that refer to or relate to communications involving Popofsky and the FBI, an FBI special agent, and Mr. Hayford or his legal counsel related to Defendant, his brother, and McCown

Enterprises. As with the requests just addressed, the language "refer to or related to communications" is vague and overbroad. These requests will be limited to communications (email, mail) sent by, received from, or copying Steven Popofsky, that do not touch on privileged communications.

Defendant contends that these requests seek discovery that is relevant to the validity of Plaintiff's claims and that "could include exculpatory evidence to present to a jury that the FBI found no fraud, involvement or knowledge of Phillip" in his brother's fraud. (ECF No. 50, PageID.1738). Plaintiff asserts that this discovery is unnecessary because there is no dispute that Defendant was aware of his brother's fraud and the need to return the money to Plaintiff when the FBI seized his funds. (ECF No. 51, PageID.1803). It argues that it does not matter what the FBI did or did not find about Defendant, because it can still succeed on its conversion claim, even if Defendant were not involved in the fraud. Defendant does not appear to dispute that he knew of his brother's fraud when his funds were seized.

Plaintiff made no arguments specific to the requests for communications about Paul McCown or McCown Enterprises. The discovery Defendant seeks, with the limitations noted above regarding "communications" and excluding information before the FBI's seizure of Defendant's funds, is relevant. Plaintiff must produce relevant documents or a privilege log **within 21 days** of this Order.

B.    Motion to Quash (ECF No. 32)

On October 25, 2022, Plaintiff served a copy of a subpoena directed to Defendant's employer's general counsel for emails and text messages sent by, sent to, or copied to Defendant.  (ECF No. 32-2).  Defendant wants an order quashing that subpoena and a protective order requiring that Plaintiff obtain leave of the Court before seeking any discovery from Plaintiff's employer.

In support of his motion, Defendant argues the subpoena should be quashed because (1) the information would be duplicative of information obtained from Plaintiff's interrogatories to Defendant and of discovery responses in a separate criminal matter in Wyoming, (2) there are less intrusive means through which Plaintiff can get the information such as the FBI agent who conducted the criminal investigation related to the Wyoming case, and (3) a subpoena directed at Defendant's employer is harassing and may interfere with his employment relationship.  (ECF No. 32, PageID.559-64).  In response to requests served on him, Defendant states that he searched the two email accounts issued to him by his employer but found no documents that contained Plaintiff's keywords.  (*Id.* at PageID.564).

Defendant also argues that the doctrine of judicial estoppel prohibits this line of discovery.  He contends that there are no allegations here that Defendant was involved in the fraudulent scheme perpetrated by his brother, yet Plaintiff seeks

13

documents using keywords that suggest they are looking for evidence of involvement.  (*Id.* at PageID.568-69).

In response, Plaintiff argues that, since state of mind is an element of its conversion and statutory conversion claims, it is entitled to discovery on Defendant's state of mind.  Thus, it insists it can seek work email used to communicate about his knowledge of the money he received from his brother.  (ECF No. 37, PageID.1108-09).  As to the fact that Plaintiff seeks the same information from Defendant through interrogatories, Plaintiff contends it may seek the information from multiple sources to determine whether it is accurate.  (*Id.* at PageID.1114).  Plaintiff asserts that Defendant has not established entitlement to a protective order against the subpoena.  And as to Defendant's concern about his employment relationship, Plaintiff notes that this assertion was conclusory.  (*Id.* at PageID.1116-17).

Generally, a party has "'no standing to seek to quash a subpoena directed to a non-party.'"  *Underwood v. Riverview of Ann Arbor*, 2008 WL 5235992, at *1 (E.D. Mich. Dec. 15, 2008) (quoting *United States v. Wells*, 2006 WL 3203905, at *2 (E.D. Mich. Nov. 3, 2006)).  If the movant can show the subpoena would violate their privilege or a personal right, they may have standing.  *Mann v. Univ. of Cincinnati*, 114 F.3d 1188 (6th Cir. 1997).  The party seeking to quash a third-party subpoena must meet a heavy burden of proof.  *Wells*, 2006 WL 3203905, at

*2.  For example, a party who makes no claim of privilege or personal right lacks standing to quash a third-party subpoena considering the heavy burden. *Underwood*, 2008 WL 5235992, at *1.

Defendant argues he has standing because the work emails are personal and the requests are "an intrusion into the seclusion of the relationship." (ECF No. 40, PageID.1136-37).  The Court finds these statements insufficient to confer a privilege or personal right by Defendant to quash the subpoena directed at his employer.  Based on the arguments advanced by the parties, it does not appear that the search would encompass overly personal emails in the work email account, although Defendant provided an example that the search terms returned a finding from a medical journal that is irrelevant.  And as to the potential intrusion into the relationship, this appears to be speculative and unworthy to confer standing.

Unlike a motion to quash, a motion for a protective order is available to "a party or any person from whom discovery is sought."  Fed. R. Civ. P. 26(c)(1). Courts in the Sixth Circuit have interpreted the mention of "a party" as allowing parties to file a motion for a protective order for a non-party.  *See Fleet Bus. Credit Corp. v. Hill City Oil Co., Inc.*, 2002 WL 1483879, at *2 (W.D. Tenn. Jun.26, 2002) ("Many district courts have acknowledged this aspect of the rule which allows a party to file a motion for protective order on behalf of a non-party").

15

Thus, some courts have reviewed motions to quash third-party subpoenas under the standards of a Rule 26(c) protective order as well. *Underwood*, 2008 WL 5235992, at *2. The Court will do so here.

Under Fed. R. Civ. P. 26(c)(1) the court may issue a protective order to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense." To satisfy the requirements of Rule 26(c), "the moving party must show 'good cause' for protection from one (or more) harms identified in Rule 26(c)(1)(A) 'with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 236 (6th Cir. 2016) (quoting *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012)). "To show good cause, a movant for a protective order must articulate specific facts showing 'clearly defined and serious injury' resulting from the discovery sought and cannot rely on mere conclusory statements." *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001) (citations omitted). Furthermore, "[t]o justify restricting discovery, the harassment or oppression should be unreasonable, but 'discovery has limits and these limits grow more formidable as the showing of need decreases.'" *Serrano*, 699 F.3d at 901 (quoting 8A Charles Alan Wright & Arthur R. Miller *et al.*, Federal Practice and Procedure § 2036 (3d ed. 2012)). Courts have broad discretion to determine whether a protective order is appropriate and what degree of protection is

16

required.  *Seattle Times v. Rhinehart*, 467 U.S. 20, 36 (1984).

The motion to quash or for protective order is **DENIED**.  Defendant has not articulated specific facts showing a *clearly defined and serious injury* he will suffer if the subpoena is allowed to go forward.  No rule prohibits a party from seeking information from another party and seeking the same or similar information from a third party.  Parties are not limited to a single set of requests on a topic.  As stated above, Defendant's assertion that the subpoena could harm the relationship between employer and employee is speculative and conclusory.  He offered no evidence to support the assertion.  The employer may move to quash the subpoena if it considers it necessary and has an appropriate basis.

C.    Motion For Order Regarding Promissory Note (ECF No. 34)

Defendant moves the Court to order that the promissory note between Plaintiff and his brother Paul is a lawfully enforceable contract, and thus that Plaintiff violated Fed. R. Civ. P. 37(c)(2) for stating it is not an enforceable contract in response to requests for admission.  This dispute arises from an argument Plaintiff made in the Wyoming case and Plaintiff's representations in this case.

In the Wyoming case, Plaintiff moved for summary judgment against Paul McCown and argued that the promissory note between them was a lawfully enforceable contract.  (ECF No. 34, PageID.961-62).  That court awarded

17

summary judgment in Plaintiff's favor on its fraudulent inducement claim. Michigan law provides that fraud in the inducement to enter a contract renders the contract voidable at the option of the defrauded party. (*Id.* at PageID.964). In the complaint against Defendant, Plaintiff asserts that Paul executed a promissory note on behalf of McCown Enterprises, LLC for the $15 million loan. (ECF No. 1, PageID.4, ¶ 16). In initial disclosures, Plaintiff stated that Defendant was liable for 5.5% interest on $375,000 beginning May 10, 2021. The promissory note between Plaintiff and Paul included a provision for a 5.5% interest rate. (ECF No. 34, PageID.34). According to Defendant, because Plaintiff asserts entitlement to 5.5% interest against him, Plaintiff is reaffirming that the promissory note is enforceable. (*Id.* at PageID.964). This matters because, according to Defendant, Michigan law does not allow for recovery of interest on a debt owed without an express contract. (ECF No. 43, PageID.1598).

Defendant served requests for admission on Plaintiff, five of which are at issue. These asked for admissions regarding the promissory note. For example, he asked Plaintiff to admit that McCown Enterprises was permitted to use its funds to pay the balance owing on the promissory note. After objections, Plaintiff denied the request stating that the promissory note and transaction were void and/or voidable because of fraud. (ECF No. 42, PageID.1577).

Defendant argues that, since Plaintiff asserted the enforceability of the contract in Wyoming and seeks 5.5% interest here, it made a material misrepresentation in the requests to admit when it stated the promissory note was void or voidable.  Plaintiff argues the note is not relevant here because there is no breach of contract claim and that, because of the Wyoming court's granting summary judgment on the fraudulent inducement claim, it is within its right to treat the note as void.

The motion is **DENIED**.  There is nothing incongruous about arguing in one case that the note is enforceable, and then after winning on the fraudulent inducement claim in that case, treating the note as void or voidable here. Defendant concedes that it is the law in Michigan that Plaintiff can treat the note as void or voidable in this case.  *See Bazzi v. Sentinel Ins. Co.*, 919 N.W.2d 20, 29 (Mich. 2018).  Given Plaintiff's sworn responses to the request for admission, Plaintiff is treating the note as void or voidable here.  Whether it can recover 5.5% interest if successful on the merits is a matter than can be determined at a later date.

D.    Motion for Leave to File Sur-Reply (ECF No. 44)

Plaintiff moved for leave to file a sur-reply to Defendant's reply to his motion regarding the enforceability of the promissory note.  In the proposed sur-reply, Plaintiff asks the Court to strike the portions of the reply brief which contain

19

the contents of Plaintiff's settlement offer under Fed. R. Evid. 408, which prohibits use of settlement offers for certain purposes. (ECF No. 44-1, PageID.1616). It contends that leave to file this sur-reply should be granted because Defendant disclosed the settlement discussions for the first time in reply.

Defendant opposes the motion for several reasons: (1) Plaintiff did not seek concurrence before filing the motion,[1] (2) Plaintiff did not produce the settlement proposal until 13 days after Defendant filed the motion regarding the promissory note, and (3) the settlement offer was permissibly used to rebut Plaintiff's argument that the promissory note is immaterial. (ECF No. 45). On the last point, Defendant argues that he used the settlement offer to show how much Plaintiff is claiming in damages. He contends that Plaintiff has no right to sue for statutory conversion because the promissory note between Plaintiff and Paul is enforceable. Thus, Defendant says the note is material. (*Id.* at PageID.1632-33, 1636, 1639-42).

Plaintiff's motion is more properly characterized as a motion to strike portions of the reply brief which reference the contents of the settlement offer. So characterized, the motion is **GRANTED**. Rule 408 prohibits use of settlement offers to prove or disprove the validity or amount of a claim. This evidence may

---

[1] Plaintiff's counsel emailed Defendant's counsel seeking concurrence, then filed the motion about three hours later. Defendant's counsel had not yet responded to the email. Although Plaintiff should have waited more than three hours for a response, the Court will not deny the motion on this basis. There was an attempt at obtaining concurrence, and clearly Defendant does not concur in the relief sought.

be used, however, to prove a witness's bias, to negate a contention of undue delay, or to prove an effort to obstruct a criminal investigation or prosecution. Defendant used the settlement offer for his point that Plaintiff is seeking damages to which it is not entitled, or in other words, to establish the invalidity of a claim. Since the motion regarding the promissory note is denied, there is no prejudice to Defendant in granting this motion striking portions of its reply. The response to the sur-reply also contains the contents of the settlement offer will also be stricken.

Defendant is **ORDERED** to file a redacted version of its reply brief and response to the motion for leave to file a sur-reply, and also to either redact the exhibit containing the settlement offer or leave the exhibit out entirely. Defendant should accomplish this **within 14 days** of this Order. The versions currently on file will be stricken after the redacted copies are uploaded.

E.   Motion to Compel Depositions (ECF No. 41)

Defendant served notices of deposition to depose Plaintiff's CEO Mr. Kang, President Mr. Kim, and a Fed. R. Civ. P. 30(b)(6) corporate representative. Plaintiff identified Mr. Kang and Mr. Kim as having knowledge regarding all the facts and events described in the complaint. The depositions were noticed to take place in Canton, Michigan, at Defendant's counsel's office. Plaintiff opposes the notices, insisting that the depositions seek irrelevant information and if they go

forward, they should occur where the corporate employees and representatives reside outside of Michigan.

First, Defendant argues that Plaintiff has waived any objections to the depositions because it did not move for a protective order or to quash the notices within 14 days of notice of the dispute. The Court will not treat objections waived. Here, neither party was dilatory in bringing the problem to the Court's attention, and the issue has not become stale. And the parties worked to resolve the issues, including exchanging emails though November and participating in a telephonic status conference. After that conference, the Court entered a minute entry on October 26, 2022, indicating that the parties will file motions on the dispute.

Second, Plaintiff's response includes a cross-motion for a protective order. The Court will not address the cross-motion because this Court's Electronic Filing Policies and Procedures rules do not permit a party to combine a motion with a response. Rule 5(f).

Finally, the motion to compel the depositions to occur in Canton, Michigan is **GRANTED IN PART**.

 Plaintiff argues certain topics are irrelevant or disproportional to the needs of the case. Topics A-C ask for information about Plaintiff's corporate dealings—sources of income (Topic A); practices, policies, and procedures effective at the time of the loan to Paul (Topic B); and persons involved in the loan to Paul (Topic

C).  Plaintiff contends that these topics are irrelevant to the common law and statutory conversion claims arising from Defendant's retention of the funds. Defendant did not address the relevance of these topics in reply.  (*See* ECF No. 49).  On the arguments presented, the Court agrees that Topics A-C are irrelevant to the claims.  Defendant may not ask questions related to these topics.

Topic D seeks information about Plaintiff's investigation into the facts asserted against Defendant including review of documents and witness interviews. Defendant is directed to review the portion of this Order, above, that addresses the permissible scope of discovery into a party's counsel's work on a case and to narrow the topic accordingly.

Topic I asks for Plaintiff's knowledge of any Rule 68 offer of judgment from Defendant.  As Plaintiff noted, evidence of an unaccepted offer is inadmissible except when used to determine costs.  Fed. R. Civ. P. 68(b).  Evidence need not be admissible to be relevant.  So long as questioning does not encroach on attorney-client privilege or attorney work product, the topic can go forward.

Now to the propriety of seeking the depositions of three of Plaintiff's employees and where those depositions should occur.

Defendant is seeking to depose two employees and one 30(b)(6) witness, not three 30(b)(6) witnesses as Plaintiff contends.[2]  As a basic proposition, Defendant's requests are permissible.  Plaintiff is mistaken that Defendant may only depose Kang and Kim by Rule 45 subpoena.  A deposition notice, unaccompanied by a subpoena, is sufficient to compel the appears of a corporate party's officers, such as the CEO or president, at a deposition.  *See Maag Audio, LLC v. Earbyte, Inc.*, 2020 WL 12707953, at *4 (E.D. Mich. Nov. 19, 2020).

As to location, when the parties have a dispute over the location of a deposition, courts have wide discretion in resolving the matter.  *See Brasfield v. Source Broadband Servs.*, LLC, 255 F.R.D. 447, 449 (W.D. Tenn. 2008) ("The court's broad discretion to designate a time and place for a deposition is derived from Rule 26(c), which allows a court, for good cause, to issue protective orders in order to 'protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'") (quoting Fed. R. Civ. P. 26(c)(1)).

A Rule 30(b)(6) deposition typically takes place at the corporation's principal office, here that would be in New York.  *M & C Corp. v. Erwin Behr GmbH & Co., KG*, 165 F.R.D. 65, 67 (E.D. Mich. 1996) (citing *Sugarhill Records, Ltd. v. Motown Rec. Corp.*, 105 F.R.D. 166, 171 (S.D.N.Y. 1985)).  The balance of

---

[2] It is certainly possible that either the CEO or President of the company may also serve as the 30(b)(6) witness, but this does not change the character of the notices.

equities changes somewhat when the corporation is the plaintiff who chose the forum for the lawsuit.

The Court has considered location of counsel, the burdens and expense of travel, and judicial economy.  The Court concludes that the 30(b)(6) deposition will take place in this District.  Travel to Michigan for a day (Defendant asserts it can accomplish all three depositions in one day by 5 p.m.) is not unduly burdensome for the leaders of a financial corporation.  Plaintiff chose to bring suit in this District, and has local counsel here.  It should not be surprised at coming here to participate in a Rule 30(b)(6) deposition.  *See Am. Gen. Life Ins. Co. v. Harshman*, 299 F.R.D. 157, 158 (E.D. Ky. 2014).  Plaintiff did not bring forth clearly defined specific harm that would befall its corporate representative having to come here for the deposition.

Other party depositions follow the same general rule as 30(b)(6) depositions: the party noticing the deposition selects the location.  8A Wright & Miller, Federal Practice & Procedure § 2112 at 73 (2d ed. 1994) ("[T]he examining party may set the place for deposition of another party wherever he or she wishes, subject to the power of the court to grant a protective order under Rule 26(c)(2) designating a different place.").  And typically, depositions under Rule 30(b)(1) are taken at the corporation's principal place of business unless unusual circumstances exist. *Recaro N. Am., Inc. v. Holmbers Childsafety Co. Ltd.,* 2011 WL 5864727, *1 (E.D.

Mich. Nov. 22, 2011). "Corporate defendants are frequently deposed in places other than the location of the principal place of business, especially in the forum, for the convenience of all parties and in the general interests of judicial economy." *Sugarhill Records Ltd. V. Motown Record Corp.,* 105 F.R.D. 717, 171 (S.D.N.Y 1985). Factors to consider in making this determination include the "location of counsel for the parties in the forum district, the number of corporate representatives a party is seeking to depose, the likelihood of significant discovery disputes arising which would necessitate-resolution by the forum court; whether the persons sought to be deposed often engage in travel for business purposes; and the equities with regard to the nature of the claim and the parties' relationship." *Cadent Ltd. v. 3M Unitek Corp.*, 232 F.R.D. 625, 629 (C.D. Cal. 2005).

Again here, Plaintiff did not submit facts or evidence establishing undue expense or burden by having to come to Michigan for the deposition. And since the 30(b)(6) deposition will occur here, and Defendant represented that all the depositions could occur on the same day, the Court concludes that the 30(b)(1) depositions of Mr. Kang and Mr. Kim take place in this District.

In sum, the motion to compel is granted in part. The three depositions must go forward in this District, but the topics are limited as addressed above.

Discover is set to close on February 13, 2023. This likely will not be enough time to complete discovery, including depositions. The parties are directed to

confer on an extension of the case management deadlines and submit a stipulation and proposed order for review and adoption. If the parties cannot come to an agreement and believe an extension is necessary, a motion must be filed.

**IT IS SO ORDERED**.

Date: February 2, 2023                     s/Curtis Ivy, Jr.
                                           Curtis Ivy, Jr.
                                           United States Magistrate Judge