## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

RIA R SQUARED, INC.

**Case No.  21-cv-12937**

              Plaintiff,

**MAGISTRATE JUDGE
CURTIS IVY, JR.**

   v.

PHILLIP McCOWN,

            Defendant.

### DEFENDANT PHILLIP McCOWN'S
### MOTION FOR SUMMARY JUDGMENT

### ORAL ARGUMENT REQUESTED

**NOW COMES**, Defendant Phillip McCown, by and though his undersigned counsel, and moves this Honorable Court under Rule 56(a) for the entry of summary judgment in Dr. McCown's favor on all three counts of Plaintiff's complaint, as no genuine issue of material fact exists and Dr. McCown is entitled to judgment as a matter of law.  Pursuant to this Court's February 13, 2023 Order, Dr. McCown is permitted to file this dispositive motion[1] and it is timely.  ECF No. 65.

WHEREFORE the reasons stated herein summary judgment under Rule 56(a) should be granted in Dr. McCown's favor on all three of Ria's counts and a defense judgment entered in Dr. McCown's favor.

---

[1] Dr. McCown's Response to Plaintiff's motion for summary judgment was not a cross-motion for summary judgment as Ria labeled it.  Dr. McCown noted the relief available under Rule 56(f)(1) which the Court could grant in his favor as the non-movant.  Response, ECF No. 71, PageID.2283 (*citing* Fed. R. Civ. P. 56(f)(1)); *see also Lawrence v. Pelton,* No. 20-2011, 2021 U.S. App. LEXIS 10367, at *6-7 (6th Cir. Apr. 9, 2021) (unpublished) (*citing* Fed. R. Civ. P. 56(f)(1)) ("the district court announced that it intended to grant summary judgment to Pelton on Lawrence's substantive due process claim and gave Lawrence fourteen days to show that Pelton was not entitled to summary judgment.")

# BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## ISSUES PRESENTED

1.     Whether summary judgment should be granted in favor of Defendant Dr. McCown under Rule 56(a) on Counts II and III, as New York law governs "any claim, controversy, dispute or cause of action (whether in contract or tort or otherwise) based upon, arising out of or relating to this Note and the transactions contemplated hereby" regarding the $14.7 million loan Ria provided Paul D. McCown, the origin of the $375,000 Ria has sued Dr. McCown for, as New York law does not provide for suit in tort when the exclusive remedy is a breach of contract claim?

2.     Whether summary judgment should be granted in favor of Defendant Dr. McCown under Rule 56(a) on Counts II and III under either New York's economic-loss rule or judicial estoppel doctrine?

3.     Whether summary judgment should be granted in favor of Defendant Dr. McCown under Rule 56(a), as federal preemption required Ria to seek the $351,300.67 seized by the FBI in the forfeiture action in the United States District Court for the District of Wyoming and not sue under state law, Dr. McCown provided value for the $375,000 transfer, alternatively Ria has received $375,000 in total but refuses to honor its stipulation, ECF No. 14, PageID.240, to dismiss this case with prejudice?

## MOST APPROPRIATE AUTHORITY

Fed. R. Civ. P. 56(a); *Biegas v. Quickway Carriers, Inc*., 573 F.3d 365 (6th Cir. 2009); *Johnson v. Ventra Group, Inc*., 191 F.3d 732 (6th Cir. 1999); *Marshall v. Hyundai Motor Am*., 334 F.R.D. 36 (S.D.N.Y. 2019); *Bocre Leasing Corp. v. Gen. Motors Corp. (Allison Gas Turbine Div.)*, 84 NY2d 685, 645 N.E.2d 1195, 621 N.Y.S.2d 497 (N.Y. App. 1995); MCL 566.38(1)

## FACTS

1.  On January 15, 2020, Paul D. McCown owned and controlled 100% of McCown Enterprises, ECF 69-2, PageID.2211, but subsequently thereafter diluted his ownership interest percentage providing non-voting shares of the company to others, including: (a) Paul Alarcon, 9.99 % on February 13, 2020, (Ex. D at 239[2], Alarcon Decl. ¶ 5; id. at 244-254); (b) Susan Rowney (neé) Gleason, (unstated share) in May or June 2020, (Ex. C at 783 ¶ 10-13); (c) Jonathon Tonkowich, 5% on August 10, 2020, (Ex. E at 317 Tonkowich Aff. ¶¶ 2, 11; at 321-331); and (d) Phillip McCown ("Dr. McCown"), 5% on November 12, 2020, as later compensation for his sanitizer formula provided to Paul. (Ex. G at 996, Dr. McCown Decl. ¶ 11-12,

---

[2] The three or four digits after the Exhibit letter, refer to the Bates number of the document produced in discovery by Defendant, e.g. 239 is the page marked PHILLIP McCOWN 0239. Exhibit letters here correspond to the Exhibit letter in Dr. McCown's Response in Opposition to Plaintiff's partial motion for summary e.g. Ex. D is at ECF No. 71-5, a copy of which is filed again herein under that same Exhibit letter, and correspond to the Motion to Compel. ECF No. 73.

id at 1026-1036, Ex. E at 242-243, Alarcon Decl. ¶ 16, Ex. F at 318, Tonkowich Aff. ¶¶ 13-14, Ex. D at 783, Rowney Aff. ¶ 14).

2.    Dr. McCown has a Ph.D. from Yale University in Molecular, Cellular and Developmental Biology, created a formulary that would sanitize and/or neutralize any hard or soft, but solid, nonmetallic surface (e.g. glass and rubber, respectively) of almost every type of bacteria, bacterial capsids, or viral particles for a period of ~24-48 hours, non-inclusive of additional, concentrated contact with bacterial and/or viral particles from novel exposure.  (Ex. G at 995-996, Dr. McCown Decl. ¶¶ 6-8; id. Dr. McCown's CV at 1004-1009).

3.    Beginning on April 25, 2020, via Google Gmail, Dr. McCown provided Paul his proprietary formulization for sanitizer in an Excel spreadsheet and instructions on how to mix it, which Paul and Ms. Rowney later mixed at Sweetwater Spirits.  (Ex. G at 996, Dr. McCown Aff. ¶¶ 9, 10; id. at 1011-1024); see also (Ex. D at 242, Alarcon Decl. ¶ 15); (Ex. C at 783, Rowney Aff. ¶¶ 17-18);  (Ex. E at 317 Tonkowich Aff. ¶¶ 5-6).

4.    Paul made representations that, "McCown Enterprises, had generated substantial income through the sales of a sanitizing solution", including the existence of "substantial contracts to disinfect sports stadiums and airports, and hundreds of millions of dollars in revenue", (Ex. I at 279, Paul D. McCown Aff ¶ 4), (Ex. D at 784, Rowney Aff. ¶ 21), "a multi-billion dollar company in the sanitation industry

with revenue in excess of a billion dollars annually." (Ex. J at 237, Tietz Aff. ¶ 11); (Ex. E at 240, Alarcon Decl. ¶ 8).

5.     Former undersecretary Dr. Emilio Gonzalez, (Ex. K), introduced Mr. Kang to Paul D. McCown informing Mr. Kang that, "Paul [D.] McCown as well as Jon Tonkowich were very honest and were [C]atholic [] people that were trying to do good within [] Wyoming Catholic College." (Ex. PP. Kang. Dep. Tr. 35:21 – 36:7).

6.     On May 10, 2021, Mr. [Paul] McCown executed a promissory note on behalf of McCown Enterprises in Plaintiff [ Ria's] favor for $15 million as well as a security agreement in his individual capacity to personally secure the loan with his personal WCB account. (Second David Kang Aff. ¶ 13; Doc. 61-1 pp. 64-77.) The next day, Plaintiff wired a total of $14.7 million ($15 million minus a loan origination fee) to McCown Enterprises. (Second David Kang Aff. ¶ 15.)

*Ria R Squared, Inc. v. Paul D. McCown*, Civil Action No. 21-CV-125-S, 2022 U.S. Dist. LEXIS 239622, at *8 (D. Wyo. Mar. 17, 2022); (Ex. L, *Ria R Squared, Inc. v. Paul D. McCown,* Complaint, Doc. 1-3, Exhibit 18 (Promissory Note) at 543-550, id. Exhibit 19 (Security Agreement) at 553-556).

7.     The executed Promissory Note provides, in part, terms as follows:

1.     <u>Definitions</u>. * * * '**Applicable Rate**' means a rate of interest that is calculated on a daily basis at a rate equal of the lesser of (a) 5.50% per annum and (b) the highest rate permissible under Law. [* * *]
7.1     <u>Covenants</u>.  The Barrower covenants and agrees that until full and complete performance by the Barrower of all obligations arising under the Note, the Barrower: [* * *]

(c)     shall not transfer monies from the bank account referenced in the Deposit Account Control Agreement without prior written approval from the Barrower.

8.      Events of Default.   The occurrence of any of the following shall constitute an Event of Default hereunder: [* * *]

8.2    Breach of Representation and Warranties.   Any representation or warranty made or deemed made by the Borrower to the Noteholder herein or in any certificate, document or report delivered in conjunction with the Loan is incorrect in any material respect or shall have been false or misleading in any material respect on the date as of which such representation of warranty was made or deemed made.  [* * *]

9.      Remedies.   Upon the occurrence of an Event of Default . . . the Noteholder may at its option, by written notice to the Borrower declare the entire principal amount of this Note, together with all accrued interest thereon and all other amounts payable hereunder, immediately due and payable. Immediately following such written notice or after the commencement of any case or proceeding described in Section 8.4, the Noteholder shall enforce its Security.  [* * *]

11.2    Governing Law.   This Note and any claim, controversy, dispute or cause of action (whether in contract or tort or otherwise) based upon, arising out of or relating to this Note and the transactions contemplated hereby and thereby shall be governed by the Laws of the State of New York without regard to conflict of laws principles (other than Sections 5-1401 and 5-1402 of the New York General Obligations Law).

(Ex. L, *Ria R Squared, Inc. v. Paul D. McCown,* Complaint, Doc. 1-3, Exhibit 18 (Promissory Note) at 543-550); *see also* (Ex. PP, Kang Dep. Tr. 125:10 – 127:12).

8.      From the $14.7 million McCown Enterprises received from Ria, Paul D. McCown subsequently transferred identifiable monies to at least the following: (a) $10.5 million to the "Goldman Sachs Philanthropy Fund"; (b) $841,863 to the State of Wyoming via cashier's check; (c) $750,000 to Paul Alarcon; (d) $550,000 via a transfer to Paul's personal account then to Trolan LLC; (e) $375,000 to Mr.

6

Tonkowich; (f) $375,000 to Ms. Rowney; and (g) $375,000 to Dr. McCown.  (Ex. L at 413, 6/22/21 Kang Aff. ¶¶ 25(i)- (vi)); (Ex.  D at 241, Alarcon Decl. ¶ 10); (Ex. E at 318, Tonkowich Aff. ¶ 12); (Ex. C at 785, Rowney Aff.  ¶¶ 28-33); (Ex. J at 236, Tietz Decl. ¶ 8); (Ex. F at 345, Charging Document ¶ 29).

9.      On May 13, 2021, from the $375,000 received, Dr. McCown transferred $23,800 of that identifiable amount from his savings account to his checking account. (Ex. G at 997, Dr. McCown Decl. ¶16) (Ex. N at 973, 975, 979, Scharstein Decl.)

10.     "On May 26, 2021, [Ria] declared the note in default on that basis and accelerated the amount due in accordance with the terms of the note" pursuant to "Paragraph 8.2 of the Promissory Note".  (Ex. L at 412, 6/22/21 Kang Aff. ¶ 22).

11.     On June 2, 2021, Ria filed suit against Paul D. McCown and McCown Enterprises, LLC in the Superior Court of the State of New York, County of New York, "to recover the total balance of the loan, $15,000,000, all of which is now due and payable", alleging that, "[t]hose oral and written misrepresentations gave rise to an Event of Default under the promissory note that was executed in connection with the loan." (Ex. R at 1, 3).

12.     On June 17, 2021, the FBI seized $351,300.67 from Dr. McCown's savings account, including $100.67 dollars of Dr. McCown's personal money, reducing the balance to zero. (Ex. N at 973, 975, 979, Scharstein Decl.)

13.     Prior to June 21, 2021, Dr. McCown did not know or have any reason to believe that the $375,000 Paul D. McCown transferred to Dr. McCown was obtained by fraud.    (Ex. G at 997, Dr. McCown Decl. ¶ 21); see also (Exs. C, D, E).

14.     On June 22, 2021, Ria sued Paul D. McCown and McCown Enterprises, LLC, *Ria R Squared, Inc. v. Paul D. McCown, et al.,* 21-CV-125 (D. Wyo.), which included, Claim II Breach of Contract, seeking Paul and McCown Enterprises to "repay the $15 million, plus pre-judgment interest at the rate of 5.5%, per the terms and conditions of the Note". (Ex. L at 388-390, Complt. ¶¶ 66-77); *Ria R Squared, Inc. v. Phillip McCown,* ECF No. 1-4, PageID.61-63 ¶¶ 66-77 (same).

15.     On October 26, 2021, Ria's counsel, Mr. Popofsky stated, "it wouldn't be cost-effective for us to pursue discovery of your client at this time, with currently only $21,000 at stake", (Ex. S at 1075), and "he [Dr. McCown] can offer to buy a release from any wider liability by paying a real sum of money – beyond the $21,000 that is clearly owed – but that would seem foolish on his part if he truly was involved." (Id. at 1077).

16.     On December 17, 2021, Ria sued Dr. McCown, alleging in part, "[o]n May 10, 2021, Paul [D. McCown] executed a Promissory Note and Security Agreement on behalf of McCown Enterprises, LLC for the $15 million loan" and "[o]n or about May 11, 2021, Paul [D. McCown] transferred the majority of the

$14.7 million out of his business's account . . . including but not limited to transferring $375,000 to Defendant, his brother." *Ria R Squared, Inc. v. Phillip McCown,* ECF No 1, PageID.4 ¶ 6, Id. PageID.5 ¶ 19.

17.    "On February 7, 2022, R Squared received $23,699.33 from Phillip McCown", (Ex. U at 719, 10/31/22 Kang Aff. ¶ 9a), a check from Mr. Evanchek's firm's ILOTA.  See (Ex. T at 994, Hall Decl. at 992); see (Ex. S at 1055, Evanchek Decl. ¶ 23).

18.    On April 22, 2022, Ria and Dr. McCown, through their respective counsel, stipulated in this case that, Ria "having received from [Dr.] McCown all monies at issue in the Complaint that were not seized by the United States of America [and] allow[ing] time for [] Ria to exercise its rights in any forfeiture action regarding the monies, seized by the USA, Ria R Squared will then enter a dismissal with prejudice of its underlying claims against [Dr.] McCown".  ECF No. 14, PageID.240.

19.    On July 8, 2022, the Court for District of Wyoming in the criminal matter held that Ria's recovery for Paul D. McCown's fraud was limited to Ria's bargained for contract amounts, that being principal amount of the loan $14.7 million at 5.5% interest, (Ex. X at 931, Tr. 83:3-17), noted the payment of $23,699.33 by Dr. McCown, (id. at 932, Tr. 84:17-21), and released monies to Ria, including the $351,300.67 seized from Dr. McCown's Fifth Third Account. (Ex. Y at 351).

20. "On September 28, 2022, R Squared received a payment of $13,577,486.73 ("Restitution Payment") from the United States District Court Clerk". (Ex. U at 720, 10/31/22 Kang Aff. ¶ 9k).

21. On October 31, 2022, in the civil matter before the District of Wyoming, Ria moved for summary judgment on its breach of contract claim against Paul D. McCown and McCown Enterprises, LLC, arguing in part, "***The Promissory Note is a lawfully enforceable contract***" seeking pre-judgment and post-judgment interest at the contract rate of 5.5%. (Ex. BB at 699-705) (emphasis original).

22. On December 16, 2022, the District of Wyoming entered a Finial Order of Forfeiture. *United States of America v. Paul D. McCown,* 22-CR-23-SWS, Final Order of Forfeiture, Doc. 51 (D. Wyo. Dec. 16, 2022). (Ex. QQ).

23. On December 19, 2022, Ria, though Mr. Kang, entered into a settlement agreement with Paul D. McCown and McCown Enterprises, LLC, resolving Ria's pending motion for summary judgment on Ria's breach of contract claim, Count II, in the civil matter in the District of Wyoming, in which the Agreement expressly identifies the "$23,699.33" in this case as being "from the Loan proceeds", (Ex. DD, p. 1), and based on the Agreement, Ria and Paul D. McCown stipulated to the entry of judgment. (Ex. EE).

24. On March 13, 2023, the District of Wyoming entered a Final Judgment in Ria's favor, on Count II, Ria's Breach of Contract Claim. (Ex. FF).

25.     The March 13, 2023 Final Judgment expressly states in part, "[t]o avoid double recovery, the parties intend for the March 19, 2022 Partial Final Judgment on Fraud Claim (Doc 78) to merge into this Final Judgment." (Ex. FF).

## INTRODUCTION

The compelled in-person deposition of Ria's President and Chief Executive Officer, Myung-Kyu David Kang, demonstrates that this lawsuit is being driven by Ria's attorneys. *See e.g.* (Ex. PP, Kang Dep. Tr. 77:4 – 78:6, Id. 163:7 – 164:17, 165:23 – 176:7).[3] Ria is seeking discretionary attorney's fees under Michigan's statutory conversion statute though its attorneys' use of abusive tactics attempting to break Dr. McCown into submission, including belittling Dr. McCown and his counsel in front of Dr. McCown at the deposition of Mr. Kang, *e.g.* (Id. Tr. 175:10 - 25)[4], and subpoenaing Dr. McCown's employer but not even bothering for it to respond, instead proceeding with its motion for summary judgment. *Compare* ECF

---

[3] "I don't even understand the factual basis behind why I'm being deposed. And I traveled how many thousands of miles to come here?· I mean, I would imagine this is facts exchanged between attorneys to kind of clarify if monies has been paid, monies has not been paid." (Ex. PP, Kang Dep. Tr. 77:4 – 78:6).

[4] MR. BACUCHNER: ". . . . Mr. Warner . . . frankly, you have done your client a tremendous disservice throughout this litigation.  This all could have been resolved a long time ago, had you just acted in accord with the rules of the court, frankly in accord with your obligations as an officer of the court and, frankly, in accord with your fiduciary obligations to your client." (Id. Tr. 175:10 – 25).

No. 66 (Feb. 22, 2023), refiled ECF No.69 (Feb. 24, 2023) *with* ECF No.71-30, PageID.2892 (March 1, 2023).

It is indisputable however that Ria and Paul D. McCown, on behalf of McCown Enterprises, LLC, entered into a binding contract that contains a choice of law provision that New York law governs all claims arising out of the loan, (¶7 § 11.2), and that Ria sued Dr. McCown in an amount of $23,699.33 which is derived directly from the $14.7 million principal amount of the loan that Paul D. McCown did not pay back Ria. (¶¶ 6-11, 14-16, 19-26).  New York law does not recognize the tort of conversion where a contract gives rise to the monetary damages claimed, even when fraud in the inducement, by Paul D. McCown alone, was involved. Indeed, Ria has obtained a judgment on the breach of contract and therefore is judicially estopped.  Finally, Ria is not entitled to a judgment on Count I, Michigan Voidable Transfer Act claim, alternatively the amount should be $0 as Ria has received $375,000 the amount it has sought under the Act.

WHEREFORE because New York law applies to Counts II and III and Ria has not stated a cause of action to which relief can be granted under New York law, summary judgment in Dr. McCown's favor should be entered on those counts. Additionally, for the reasons stated herein, Dr. McCown is entitled to summary judgment on Count I, Ria's Michigan Voidable Transfer Act claim.

## ARGUMENT

## I.     New York Law Governs Counts II and III

Since this is a diversity case, the law of the Michigan Courts governs.[5] *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009).  However, "Michigan courts generally enforce contractual choice of law provisions." *Detroit Tigers, Inc. v. Ignite Sports Media, LLC*, 203 F. Supp. 2d 789, 793 (E.D. Mich. 2002) (*citing Johnson v. Ventra Group, Inc.*, 191 F.3d 732, 738 (6th Cir. 1999)); *Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 64 (1995).  Furthermore, "choice of law clauses c[an]not be circumvented merely because [another sovereign body's] law or procedure might be different or less favorable[.]" *See Shell v. R.W. Sturge, Ltd.*, 55 F.3d 1227, 1230 (6th Cir. 1995) (*citation omitted*).

Michigan undoubtedly has an interest in protecting its residents from out of state businesses attempting to use Michigan law to create claims not viable in the out of state businesses' state and "it is equally true that New York has an equally strong interest in protecting entities doing business in that state, and in allowing those entities to enter into and enforce contracts which are permitted by New York law."  *See MoneyForLawsuits V LP v. Rowe*, No. 10-cv-11537, 2012 U.S. Dist.

---

[5] Dr. McCown's Response to Ria's Motion for Partial Summary Judgment noted that, "Ria's Complaint and motion assumes, without analysis, that Michigan law applies to Counts I and II. Dr. McCown's Response cites Michigan law *in arguendo*." ECF No. 71, PageID.2283 n. 2.

LEXIS 43633, at *9 (E.D. Mich. Mar. 29, 2012). If the contract contains a choice of law provision that New York's law is to apply, then New York's law applies. *See Process Am., Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 133 (2d Cir. 2016).

Paragraph 11.2, <u>Governing Law</u>, of Ria's Contract unequally requires that all claims of any kind, "arising out of or relating to this Note and the transactions contemplated hereby and thereby shall be governed by the Laws of the State of New York without regard to conflict of laws principles." (¶ 6 § 11.2). "The phrases 'arising out of or relating to' are 'broad language' of expansive (albeit not unlimited) reach. *Fasano v. Guoqing Li*, 47 F.4th 91, 102 (2d Cir. 2022) (*quoting Roby v. Corporation of Lloyd's*, 996 F.2d 1353, 1359 (2d Cir. 1993)).

It is palpably clear, that the $23,699.33 principal Ria sued Dr. McCown under a common law conversation and statutory conversion theory, derives from the $14.7 million loan under the Ria-Paul D. McCown Promissory Note. Even Ria's Complaint here says so. (¶ 15). On May 26, 2021, Ria declared the contract to be in default under the terms of the Ria-Paul D. McCown contract. (¶ 9). Consistent with the contract's jurisdiction, venue and choice of law provisions, on June 2, 2021, Ria filed against Paul D. McCown and McCown Enterprises, LLC in the Superior Court of the State of New York, County of New York on the contractual promissory note. (¶ 10). Indeed, the monies transferred to Dr. McCown was a breach of the expressed anti-transfer provision of the Ria-Paul D. McCown contract. (¶ 6 § 7.1(c)).

14

Ria's only valid claims have always been a breach of contract case against Paul D. McCown only for his *ultra vires* act.  *See Mittal v. E. Parkway Serv., Inc.*, 2017 NY Slip Op 30723(U), ¶ 11 (N.Y. Sup. Ct. 2017); *see also Ward v. Joslin,* 186 U.S. 142, 151 (1902).  Ria's claim that it can void a New York governed contract under Michigan law to pursue claims in tort because a non-signatory who lived in Michigan received identifiable money as proceeds from that contract, simply lacks merit.

In ruling on a motion for summary judgment, the proper state's law must be applied. *See Versatile Helicopters v. City of Columbus*, 879 F. Supp. 2d 775, 780 (S.D. Ohio 2012).  Because Ria's claims are brought under the wrong state's law, Michigan, and not New York which is the contract's choice of "Governing Law", summary judgment should be entered in Dr. McCown's favor.  *See Marshall v. Hyundai Motor Am.*, 334 F.R.D. 36, 58 (S.D.N.Y. 2019) ("where the Pennsylvania Named Plaintiff, who has asserted her time-of-sale claim under the wrong state's law, will see it dismissed on a motion for summary judgment.") ; *see also Gina Barfoot Sellers v. Venture Express, Inc. (Ex parte Venture Express, Inc.),* 339 So. 3d 242, 244 n.3 (Ala. 2021) (Mitchell, J.) (concurring specially) (the court "would have been entitled to dismiss the case under an enforceable choice-of-law provision because Sellers asserted her claim under the wrong state's statute.").

## II.     Summary Judgment without Leave to Amend Should Attach as Ria's Claims for Common Law Conversion are Barred Under New York's Economic-Loss Rule

Under New York law, a plaintiff, "has no cause of action in tort . . . for contractually based economic losses." *Bocre Leasing Corp. v. Gen. Motors Corp. (Allison Gas Turbine Div.)*, 84 NY2d 685, 687, 645 N.E.2d 1195, 621 N.Y.S.2d 497 (N.Y. App. 1995). The New York Court of Appeals ruling in *Borce* established a "cogent policy considerations militate against allowing tort recovery for contractually based economic losses in this kind of commercial dispute." *Id.,* at 688. "The economic-loss rule provides that 'a contracting party seeking only a benefit of the bargain recovery may not sue in tort notwithstanding the use of familiar tort language in its pleadings.'" *Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank*, 247 F. Supp. 3d 377, 399 (S.D.N.Y. 2017) (*quoting  Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n,* No. 14 Civ. 10116 (KBF), 2016 U.S. Dist. LEXIS 37099, 2016 WL 1169515, at \*9 (S.D.N.Y. Mar. 22, 2016) (*quotation marks omitted*) (*quoting 17 Vista Fee Assocs. v. Teachers Ins. & Annuity Ass'n of Am.,* 259 A.D.2d 75, 693 N.Y.S.2d 554, 559 (1st Dep't 1999)); *251 W. 30th Owner LLC v. Justin Tower, LLC*, 2018 N.Y. Misc. LEXIS 4962, at \* 15, 2018 NY Slip Op 32780(U), ¶¶ 6-7 (Sup. Ct.) (*citing Washington Apts., L.P. v Oetiker, Inc*., 43 Misc 3d 265, 270, 978 N.Y.S.2d 731 [Sur Ct, Erie County 2013]; *accord Manhattan Motorcars, Inc. v Automobili Lamborghini, S.p.A*., 244 FRD 204, 220 [SD NY

2007]) ("'damages arising from the failure of the bargained-for consideration to meet the expectations of the parties are recoverable in contract, not tort.'")

Paragraph 8.2 of Ria-Paul D. McCown contract expressly contemplated the possibility that materially false and misleading statements might be made by Paul D. McCown. (¶ 6 § 8.2) (covering "incorrect", "false or misleading" statements). Under New York law, a "[p]laintiff's fraud and misrepresentation claims against [the defendant] are precisely the sorts of claims the economic-loss doctrine seeks to prevent [and are to be dismissed] for failure to present facts that would give rise to an enforceable right." *251 W. 30th Owner*, 2018 N.Y. Misc. LEXIS 4962, at * 15.

"Similar to Michigan law, New York common law states, '[w]hen parties set down their agreement in a clear, complete document, their writing should . . . be enforced according to its terms.'" *Matthews v. George Weston Bakeries Distribution*, No. 06-14875-BC, 2007 U.S. Dist. LEXIS 74910, at *9 (E.D. Mich. Oct. 9, 2007) (*citing among authorities Vermont Teddy Bear Co., Inc. v. Madison Realty Co.*, 1 N.Y.3d 470, 807 N.E.2d 876, 879, 775 N.Y.S.2d 765 (N.Y. 2004)).

Additionally, to state a claim for conversion under New York law there expressly cannot be a contract, a breach thereof is the actionable wrong. *W.B. David & Co. v. DWA Communs., Inc.*, 2004 U.S. Dist. LEXIS 2954, at *16-17 (S.D.N.Y. Feb. 25, 2004) (citations omitted) (the elements include that: "(1) an injury caused by an actionable wrong other than a breach of contract" and "Furthermore, a claim

for conversion is deemed redundant, and may be dismissed pursuant to Rule 12(b)(6), where damages are merely being sought for a breach of contract"); *see also City of New York v Eastern Shipbuilding Group, Inc.,* 162 AD3d 469, 470, 79 N.Y.S.3d 162 (N.Y. App. Ct. 1st Dept. 2018); *Siegmund Strauss, Inc. v. E. 149th Realty Corp.*, 2007 NY Slip Op 32436(U), ¶ 16 (Sup. Ct.) (*citing Wolf v. Nat'l Council of Young Isr.*, 264 A.D.2d 416, 417, 694 N.Y.S.2d 424 (2d Dep't 1999)) ("A plaintiff may not recover in conversion on the same facts that make out a breach of contract claim."); *FS Media Holding Co. (Jersey) Ltd. v. Harrison*, No. 13-CV-3144 (SAS), 2013 U.S. Dist. LEXIS 153636, at * 9 (S.D.N.Y. Oct. 25, 2013) (*quoting Moses v. Martin,* 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004) (*quoting Peters Griffin Woodward, Inc. v. WCSC, Inc*., 88 A.D. 2d 883, 884, 452 N.Y.S.2d 599 (1st Dep't. 1982)).

## III. Ria is Judicially Estopped from Asserting Tort Claims here as it Obtained a Judgment in the District of Wyoming Under a Breach of Contract Claim Theory

Ria should be judicially estopped pursuing its conversion claims as:

'under New York law . . . judicial estoppel precludes a party who assumed a certain position in a prior legal proceeding and who secured a judgment in his or her favor from assuming a contrary position in another action simply because his or her interests have changed.' 'A party invoking judicial estoppel must show that (1) the party against whom the estoppel is asserted took an inconsistent position in a prior proceeding and (2) that position was adopted by the first tribunal in some manner, such as by rendering a favorable judgment.'

*Henkel v. Wagner*, 2013 U.S. Dist. LEXIS 198998, at *16 (S.D.N.Y. Mar. 18, 2013) (internal citations omitted).

These two elements are met.  On June 22, 2021, Ria sued Paul D. McCown and McCown Enterprises, LLC, *Ria R Squared, Inc. v. Paul D. McCown, et al.,* 21-CV-125 (D. Wyo.), which included, Claim II Breach of Contract, seeking Paul and McCown Enterprises to "repay the $15 million, plus pre-judgment interest at the rate of 5.5%, per the terms and conditions of the Note". (¶ 13).  On October 31, 2022, Ria moved for summary judgment on its Count II, breach of contract claim against Paul D. McCown and McCown Enterprises, LLC, arguing in part, "***The Promissory Note is a lawfully enforceable contract***" seeking pre-judgment and post-judgment interest at the contract rate of 5.5%.  (¶ 21).  On March 13, 2023, the District of Wyoming entered a Final Judgment in Ria's favor, on Count II, Ria's Breach of Contract Claim and expressly states in part, "[t]o avoid double recovery, the parties intend for the March 19, 2022 Partial Final Judgment on Fraud Claim (Doc 78) to merge into this Final Judgment." (¶¶ 24, 25).

Likewise, prior to the final judgment in the civil case, on July 8, 2022, the Court for District of Wyoming in the criminal matter held that Ria's recovery for Paul D. McCown's fraud was limited to Ria's bargained for contract amounts, that being principal amount of the loan $14.7 million at 5.5% interest, noted the payment

of $23,699.33 by Dr. McCown, and released monies to Ria, including the $351,300.67 seized from Dr. McCown's Fifth Third Account. (¶19).

In applying judicial estoppel, "[a] third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Molina v. Faust Goetz Schenker & Blee, LLP*, 230 F. Supp. 3d 279, 283-84 (S.D.N.Y. 2017) (*citation omitted*). Here, Ria engaged in forum shopping, not continuing its original suit brought in New York County, New York, (¶ 10), where those experienced New York state court judges well versed in New York contract law, would have addressed the only claim that could have been brought under New York law, a breach of contract claim.

Ria has sued Dr. McCown under Michigan law, in Michigan, not under a breach of contract theory, but under a conversion and statutory conversion theory. Presumably so that Ria could attempt to leverage discretionary treble damages and run up attorney's fees to try to extract much more money than the $23,699.33 amount not seized by the FBI as the Ria-Paul D. McCown contract, paragraph 9, <u>Remedies</u>, defines the scope of remedies that Ria can pursue upon default, but does not provide for any attorney's fees. (¶ 7 § 9).

Even Ria's counsel pre-suit, Mr. Popofsky of Klienberg Kaplan, informed Dr. McCown's counsel that Ria's claims were valued by its counsel at "$21,000". (¶

15).  Notably, when Ria on February 7, 2022, accepted a $23,699.33 payment, (¶ 17), the only counsel for Ria who had appeared in this case, Mr. Heed, his time records show a total of 3.5 hours[6] and zero dollars in costs, ECF No. 69-3, PageID.2254, with Mr. Heed stating he has charged "as a courtesy to Klienberg Kaplan" "$300 per hour for [his] services", Id., PageID.2253, a total lodestar of $1,050 (one thousand fifty dollars).

Now Ria under Michigan law is seeking "attorneys' fees and costs totaling $114,807.56" ECF No. 69, PageID.2167, and "$71,097.99 in total damages, reflecting $23,699.33 in damages for Plaintiff's common law conversion claim, and $47,398.66 in cumulative damages for Plaintiff's statutory conversion claim (reflecting a $23,699.33 set-off for the belated return of funds)". ECF No. 69, PageID.2166.

All of these factors weigh in favor of Ria being judicially estopped under New York law from advancing tort claims here under Michigan law.

**V.     Summary Judgment on Count I, Michigan Uniform Voidable Transactions Act, should be Granted in Dr. McCown's Favor**

Ria presumably included the $351,300.67 amount seized by the FBI in to its $375,000 MUTVA alleged damages to meet the $75,000 allegation threshold for federal jurisdiction. *See Ria R Squared, Inc. v. Tonkowich*, No. 21-CV-0221-SWS,

---

[6] Mr. Heed's time records list "1.2" hrs with the description, "Draft Complaint". ECF No. 69-3, PageID.2254.

2022 U.S. Dist. LEXIS 240972 (D. Wyo. Feb. 2, 2022).  Ria's statutory conversion claims, including attorney's fees now claimed on the date of filing the Complaint did not exceed the $75,000 threshold, it totaled $72,147.99.  ECF No. 69-3, PageID.2254 (plus) ECF No. 69, PageID.2166.  In bringing this matter in federal court, Ria evaded Dr. McCown's ability to make an Offer to Stipulate to Entry of Judgment under Michigan Court Rule 2.405, similar to a Rule 68 Offer of Judgment which was made early on in this case.  The Michigan rule however is a big stick used to whack over litigious defendants by imposing "a reasonable attorney fee" as part of "actual costs" if the rejected last offer is more than what the "[v]erdict" is.  MCR 2.405(A)(1), (4), (6), MCR 2.405(D).

As to $351,300.67 of the $375,000 the FBI seized from Dr. McCown, the United States' motion to dismiss Dr. McCown's third-party complaint expressly stated that, "[i]n the context of a motion to challenge the propriety of a seizure under Fed. R. Crim. P. 41, courts have made clear that the initiation of forfeiture proceedings is the appropriate forum to challenge a seizure and divests the court of jurisdiction."  ECF No. 12, PageID.228 (*citing De Almeida v. United States*, 459 F.3d 377, 381-82 (2d Cir. 2006)).  Ria's remedy so not to violate the Supremacy Clause, Const. Art. IV, Cl 2, was to seek to recover the $351,300.67 seized by the U.S. Government was through the forfeiture action in the United States District Court District of Wyoming, which ultimately dispersed the seized monies under 18

U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c),  (¶ 22), and not sue Dr. McCown under any state's uniform voidable transactions act for the same $351,300.67 that was involuntarily seized from his bank account by the FBI.

Next, Ria's MUVTA claim fails as contrary to Ria's allegation that "Defendant gave no consideration for the $375,000 that he received from his brother Paul", ECF No. 1, PageID.7, Dr. McCown provided a sanitizer formula to Paul D. McCown and was contractually on November 12, 2020, provided a 5% share in McCown Enterprises. (¶¶ 1-3). Mr. Kang as Ria's Rule 30(b)(6) corporate representative's testimony demonstrated, Ria's unqualified allegation above in the Complaint was not premised upon any facts that Ria could articulate. (Exhibit II ¶¶ D, E); (Ex. PP, Kang Dep. Tr. 148:9-12).

Under the MUVTA "[a] transfer or obligation is not voidable under section 4(1)(a) against a person that took in good faith and for a reasonably equivalent value[.]" MCL 566.38(1).  "[O]ne becomes liable for the payment of services once those services have been rendered." *Mather Inv'rs, L.L.C. v. Larson*, 480 Mich. 1159, 1160, 746 N.W.2d 617, 617 (2008) (*citing Community Resource Consultants v Progressive Michigan Ins Co*, 480 Mich. 1097, 745 N.W.2d 123 (Docket No. 133416, issued March 7, 2008)).  Under the MUTVA "[v]alue is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred

or an antecedent debt is secured or satisfied." MCL 566.33.  These factors have been met here by Dr. McCown. See (¶¶ 1-3).

Furthermore, "[t]he primary orientation on this point is whether the transferee knowingly participated in acts or as part of a plan to hinder or defraud creditors." *Allard*, 170 B.R. 585, 594 (Bankr. E.D. Mich. 1993).  Just as in *Allard,* "the facts of this case do not fit the usual mold of fraudulent conveyance cases."  *Id.* at 595; (¶¶ 1-4, 8). Ria just like Dr. McCown, the Wyoming Catholic College and others, are victims of affinity fraud perpetrated by Paul D. McCown upon those of Catholic faith.  (¶ 5); *See* (Ex. GG).

Alternatively, Ria has received the entire $375,000 its MUVTA claim is based upon, (¶¶ 16, 20), thereby rendering its claim barred by payment, or a judgment of $0 should be entered.  *See Ward v. Idsinga,* No. 302731, 2013 Mich. App. LEXIS 1427, at *53 (Mich. Ct. App. Aug. 15, 2013); *see also* ECF No. 7, PageID.135 ¶ 1 ("Plaintiff's claims are barred by payment."); *see also* MCL 556.38(3) (emphasis added) ("If the judgment under subsection (2) is based upon the value of the asset transferred, the judgment must be for an amount equal to the value of the asset at the time of the transfer, ***subject to adjustment as the equities may require***.")

April 22, 2022, Ria and Dr. McCown, through their respective counsel, stipulated in this case that, Ria "having received from [Dr.] McCown all monies at issue in the Complaint that were not seized by the United States of America [and]

allow[ing] time for [] Ria to exercise its rights in any forfeiture action regarding the monies, seized by the USA, Ria R Squared will then enter a dismissal with prejudice of its underlying claims against [Dr.] McCown". (¶18).  On September 28, 2022, Ria received the $351,300.67 seized by the FBI, (¶20), however Ria has not dismissed this case with prejudice.  Equity demands Ria take nothing away from this lawsuit against Dr. McCown.

## CONCLUSION

WHEREFORE the reasons stated herein summary judgment under Rule 56(a) should be granted in Dr. McCown's favor on all of Ria's three counts and a judgment entered in Dr. McCown's favor.

Respectfully submitted,
/s/ Curtis C. Warner
Curtis C. Warner

Curtis C. Warner (P59915)          John A. Evanchek (P66157)
85 Denison Parkway E. #186         KELLEY & EVANCHEK, P.C.
Corning, NY 14830                  43695 Michigan Ave.
Tel: (607) 438-3011                Canton, MI 48188-2516
cwarner@warner.legal               Tel: (734) 397-4540
                                   john@kelawpc.com

## CERTIFICATE OF SERVICE

I, Curtis C. Warner, hereby certify that on **April 14, 2023**, I electronically filed the above document using the Court's ECF System which will automatically send notice and a copy to all counsel who are registered and have appeared:

| | |
|---|---|
| Thomas P. Heed | ANSELL GRIMM & AARON, P.C. |
| Heed Law Group PLLC | Joshua S. Bauchner |
| 39555 Orchard Hill Place | Layne A. Feldman |
| Suite 600 | 365 Rifle Camp Road |
| Novi, MI 48375 | Woodland Park, New Jersey 07424 |
| (248) 465-8655 | (973) 247-9000 |
| theed@heedlawgroup.com | jb@ansellgrimm.com |
| | laf@ansellgrimm.com |

Respectfully submitted,
/s/ Curtis C. Warner
Curtis C. Warner

| | |
|---|---|
| Curtis C. Warner (P59915) | John A. Evanchek (P66157) |
| 85 Denison Parkway E. #186 | KELLEY & EVANCHEK, P.C. |
| Corning, NY 14830 | 43695 Michigan Ave. |
| Tel: (607) 438-3011 | Canton, MI 48188-2516 |
| cwarner@warner.legal | Tel: (734) 397-4540 |
| | john@kelawpc.com |