## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

RIA R SQUARED, INC.,

             Plaintiff,

     v.

PHILLIP McCOWN,

             Defendant.

**Case No. 4:21-cv-12937**

**MAGISTRATE JUDGE
CURTIS IVY, JR.**

## PLAINTIFF RIA R SQUARED, INC.'S MOTION FOR SANCTIONS AGAINST DEFENDANT'S COUNSEL

NOW COMES Plaintiff Ria R Squared, Inc. ("Plaintiff") by and through its undersigned attorneys, and for its Motion for Sanctions as to counsel for Defendant Phillip McCown ("Defendant") under 28 U.S.C. § 1927, states as follows:

1.     On December 17, 2021, Plaintiff commenced this action, bringing claims against Defendant for (i) violations of the Uniform Voidable Transaction Act, MCL § 566.34; (ii) common law conversion; and (iii) statutory conversion under MCL § 600.2919a. *See* ECF No. 1.

2.     Defendant's brother, Paul McCown, defrauded Plaintiff and transferred $375,000.00 of those ill-gotten funds to Defendant. In turn, the Federal Bureau of Investigation ("FBI") seized $351,300.67 of the $375,000.00 from Defendant's savings account.

3.     In April of 2022, the parties agreed to defer discovery practice until Plaintiff received the seized funds from the FBI. Plaintiff also offered to dismiss the case without prejudice, but Defendant's counsel, Curtis Warner, Esq., refused.

4.     When the stay expired in August 2022, Plaintiff's counsel offered to extend the discovery stay another 90 days to permit Plaintiff to recover the funds. Mr. Warner refused, opting instead to engage in bad faith discovery tactics and vexatious motion practice.

5.     On October 4, 2022, Mr. Warner filed a Motion to Compel Discovery from Plaintiff and for Sanctions. *See* ECF No. 25. The Motion sought documents

and information that are protected by the attorney-client privilege and the attorney work product doctrine. *See* ECF No. 25. The Motion also discussed and disclosed privileged settlement communications. *See* ECF No. 25, PageID.300-302. On November 12, 2022, Defendant's counsel filed a Motion for Order and Offer of Proof. *See* ECF No. 34. The Motion sought an Order finding that Plaintiff's promissory note with Defendant's felon brother was enforceable, even though the court in that action already entered a partial final judgment on Plaintiff's fraud claim against Defendant's brother, permitting Plaintiff to treat the Note as void or voidable, as a matter of law. *See* ECF No. 34, PageID.957-958.

6. On November 28, 2022, Defendant's counsel filed a Motion to Compel Depositions and for Sanctions. *See* ECF No. 41. The Motion sought to compel Plaintiff's Rule 30(b)(6) witnesses to travel to Michigan for an in-person deposition. *See* ECF No. 41.

7. On November 29, 2022, Defendant's counsel filed a reply in further support of the November 12, 2022 Motion, in which Defendant's counsel directly cited privileged settlement communications and attached proposed settlement agreements as exhibits. *See* ECF No. 43, PageID.1599 & PageID.1599, n. 2; *see also* ECF No. 43-1.

8. Because Defendant's inappropriate references violated Rule 408, Plaintiff filed a sur-reply to protect the Rule 408 privilege, and the Court struck the

2

offensive portions of Defendant's Motion. *See* ECF No. 46 & ECF No. 58, PageID.1899.[1]

9.     On February 2, 2023, the Court denied the October 4, 2022, and November 12, 2022 Motions in their entirety (save for permitting Defendant to inquire into Plaintiff's factual basis for its claim that Defendant had knowledge of his brother's fraud from the time of the FBI seizure and onward). *See* ECF No. 58.

10.    The Court also found that the discovery sought by Defendant impermissibly intruded on attorney-client privilege and attorney work product doctrine. *See* ECF No. 58, PageID.1885-1886.

11.    Regarding the November 12, 2022 Motion, the Court found: "There is nothing incongruous about arguing in one case that the note is enforceable, and then after winning on the fraudulent inducement claim in that case, treating the note as void or voidable here." *See* ECF No. 58, PageID.1897.

12.    Further, the Court decided Defendant's Motion to Compel Depositions, entering an Order limiting the topics of the deposition, including that counsel could not inquire into settlement discussions, privileged communications, and attorney work product. *See* EFC No. 58, PageID.1886,1901.

13.    On February 22, 2023, Plaintiff moved for summary judgment. *See*

---

[1]     The Court remedied this infraction by requiring that Defendant re-file the reply, with the privileged portions redacted. *See* ECF No. 58, PageID.1899.

ECF No. 66.

14.     On or about February 27, 2023, Defendant served Plaintiff an amended deposition notice to take the deposition of Mr. Kang and a 30(b)(6) witness, whom RIA previously designated as Mr. Kang.

15.     On March 15, 2023, Defendant's counsel filed what amounted to a Cross-Motion for Summary Judgment, seeking entry of judgment in its favor on Counts II and III of Plaintiff's Complaint. *See* ECF No. 71.

16.     On March 20, 2023, Plaintiff produced Mr. Kang for a deposition in his individual capacity and as a Rule 30(b)(6) representative.[2]

17.     During the course of the deposition, Defendant's counsel was unable to ask an unobjectionable question, repeatedly violated the Court's February 2, 2023 Order, and abruptly ended the deposition in frustration -- walking out of the room and leaving his client behind.

18.     On April 10, 2023, Defendant filed a baseless Motion to Compel the Continuance of Plaintiff's deposition.

19.     On April 14, 2023, Defendant's counsel filed another Motion for Summary Judgment on Counts II and III of Plaintiff's Complaint while the Cross-Motion raising the same arguments was still pending. *See* ECF No. 74.

---

[2]     A true and accurate copy of the Deposition Transcript of David Kang, is annexed to the Declaration of Joshua S. Bauchner ("Bauchner Decl.") as **Exhibit B.**

20.     For the reasons set forth herein, Plaintiff submits that sanctions should be levied against Defendant's counsel in an amount to be determined after entry of the Court's order.

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order levying sanctions against Defendant's counsel, Curtis Warner, Esq., and granting whatever further relief to Plaintiff as this Court may deem just and proper.

## ISSUES PRESENTED

**1.     Whether Defendant's counsel should be sanctioned for needlessly increasing Plaintiff's litigation costs, harassing Plaintiff's representatives, and repeated violations of the Court's Orders, the Federal Rules of Civil Procedure, and professional ethics.**

Plaintiff's answer: Yes

Defendant's answer: No

## STATEMENT OF CONTROLLING AUTHORITY

## 1.     SANCTIONS

Pursuant to Local Rule 7.1(d)(2), Plaintiff hereby states that 28 U.S.C. § 1927 is the most appropriate authority.

## PRELIMINARY STATEMENT

Plaintiff is entitled to sanctions pursuant to 28 U.S.C. Section 1927 for the routinely vexatious conduct of Defendant's counsel, Curtis Warner, Esq., that is plainly engineered to harass Plaintiff and its representatives, subject Plaintiff to unnecessary and duplicative motion practice, drive up litigation costs, and

5

inappropriately invade the attorney-client privilege and attorney work product privilege.

Mr. Warner, from the start of this litigation, filed unnecessary and unsupportable motions, harassed and sought to embarrass Plaintiff's representative at his deposition inquiring into his family and religion, and attempted to circumvent privilege by, among other things, contacting former employees of Plaintiff's former counsel and examining Plaintiff's representative on his communications with counsel. Mr. Warner's behavior is systematic, consistent, and frivolous. For the reasons set forth herein, Mr. Warner must be held to account for this vexatious and unreasonable behavior and must be sanctioned to prevent him from engaging in further vexatious conduct.

## **ARGUMENT**

### I.   **Standard Of Review.**

The United States Code allows the imposition of sanctions on any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously," permitting the Court to require the offending attorney "to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The question under the statute is whether the offending attorney multiplied the proceedings unreasonably and vexatiously. *See Haynie v. Ross Gear Div. of TRW*, 799 F.2d 237, 243 (6th Cir. 1986) (vacated and remanded

on other grounds). To answer in the affirmative, there need not be a finding of recklessness, subjective bad faith, or conscious impropriety. *See id.* Rather, the statute requires only objective bad faith -- the absence of subjective bad faith does not excuse the otherwise blameworthy conduct. *See Jones v. Continental Corp.*, 789 F.2d 1225, 1230 (6th Cir. 1986).

Importantly, moreover, the ethical obligation to provide zealous advocacy does not provide counsel with "*carte blanche* to burden the federal courts…through the use of multiplicative litigation tactics that are harassing, dilatory, or otherwise 'unreasonable and vexatious'." *Id.* (emphasis in original). "[W]hen an attorney knows or reasonably should know…that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims, a trial court does not err by assessing fees attributable to such actions against the attorney." *Id.* The misconduct need only rise above simple inadvertence or negligence. *See Holmes v. City of Massillon*, 78 F.3d 1041, 1049 (6th Cir. 1996).

## II.   <u>Sanctions Indisputably Are Warranted</u>.

Plaintiff is entitled to sanctions pursuant to 28 U.S.C. § 1927, arising from Mr. Warner's duplicative, frivolous, vexatious, and harassing behavior throughout this litigation. His actions created unnecessary delay, motion practice, and cost. His behavior is inexcusable and unbecoming of an Officer of the Court.

**A.** **Mr. Warner Engaged In Vexatious And Abusive Motion Practice.**

Since October 2022, Mr. Warner has filed a multitude of discovery motions and baseless requests for sanctions in a deliberate attempt to increase the costs of litigation and harass Plaintiff. *See, e.g.*, ECF Nos. 25, 32, 34, 41, 45, 50 & 73. Mr. Warner informed Plaintiff's counsel that he is "not charging his client" and that he will persist with his burdensome and frivolous tactics until Plaintiff discontinues the litigation with prejudice and without cost to his client. *See* Bauchner Decl. ¶ 12.

In April of 2022, the parties agreed to stay discovery for 90 days to permit Plaintiff time to recover the seized funds from the FBI. *See* Declaration of Thomas Heed, ECF 77-1, ¶ 18. Though Plaintiff's counsel also offered to dismiss the case ***without prejudice*** while Plaintiff waited to recover the funds seized from Defendant, Mr. Warner inexplicably declined the offer. *Id.* at ¶ 13. When the FBI did not return the seized funds within the original 90-day timeline envisioned by the parties, Plaintiff's counsel sent Mr. Warner a stipulation extending the stay until November 11, 2022. *Id.* at ¶ 21. Mr. Warner obstinately refused to sign the stipulation. *Id.* at ¶ 22.

Thereafter, Mr. Warner engaged in bad faith discovery tactics, which began with a quickly aborted Rule 26(f) Conference on August 5, 2022, during which Mr. Warner insisted that Plaintiff immediately dismiss the case with prejudice and abruptly hung up the phone after only seven minutes. *See* ECF No. 27-2, ¶¶ 16, 25,

31. When Plaintiff's counsel suggested that the parties finish the Conference by e-mail, Mr. Warner refused, opting instead to file his own Rule 26(f) Conference Report without Plaintiff's input. *Id.* at ¶ 37. Mr. Warner's Conference Report stated the bad faith and untenable position that ***Defendant did not have an obligation to produce discovery.*** *Id.* at ¶ 37. This forced Plaintiff to file their own Conference Report, which reasonably included the provision that both parties produce discovery.[3] *See* ECF No. 18.

Despite the lack of a Scheduling Order, Mr. Warner served discovery requests on Plaintiff, dated August 11, 2022, the same day that counsel (absent the "gravely ill" Mr. Warner) appeared before Judge Parker. *See* ECF No. 27-2, ¶¶ 39, 47. The requests were patently inappropriate as they sought documents and information protected by the attorney-client privilege and the attorney work product doctrine. Nevertheless, on September 9, 2022, Plaintiff responded to Defendant's Request for Admissions, and on September 21, 2022, Plaintiff served its Objections and Responses to Defendant's Rule 34 Requests for Production and Plaintiff's Initial Disclosures. In its response, Plaintiff stated that it would provide Defendant with access to a Dropbox of documents once Defendant agreed to participate in discovery.

---

[3]     Counsel appeared before Judge Parker on August 11, 2022, though Mr. Warner did not appear because he was purportedly suffering from a "grave illness." Confronted with the disparity between the two Reports, Judge Parker did not enter a Scheduling Order and instead referred the case to a Magistrate.

However, Mr. Warner steadfastly refused to participate in discovery. Instead, he sent a series of bizarre, harassing, and repetitive e-mails requesting an in-person meeting in Michigan to address a planned motion to compel discovery, and declining Plaintiff's counsel's reasonable offers to conduct a "face-to-face" meeting via Zoom. *See* ECF No. 27-2 at ¶¶ 63, 64. Mr. Warner's office is in Corning, New York, so the only rational reason for his insistence that the parties meet in Michigan was to drive up costs and harass Plaintiff.

Apparently dissatisfied with Plaintiff's good faith discovery responses (which were served even before a Scheduling Order was entered), Mr. Warner filed a Motion to Compel Discovery from Plaintiff and for Sanctions. *See* ECF No. 25. As if his untenable legal argument was not enough, Mr. Warner further violated Rule 408 by disclosing confidential settlement communications between counsel. *See* ECF No. 25, PageID.300-302. There was no possible legal basis for Mr. Warner to demand privileged information and documents, nor was there a legal purpose to disclose confidential settlement communications.[4] Mr. Warner further argued that

---

[4]     Aside from the impropriety of the Motion to Compel's requested relief, Mr. Warner subjected the Court and counsel to a meandering brief, covering topics not germane to the discovery sought, such as Defendant's qualifications as a biologist (ECF No. 25, PageID.298), the dismissal of Defendant's Third-Party Complaint against the United States of America (ECF No. 25, PageID.302), disparaging and unsupported assertions that Plaintiff is a "questionable 'lender'" (ECF No. 25, PageID.302), and underhanded insinuations that Plaintiff's former counsel was masterminding some sort of covert campaign against Defendant (ECF No. 25, PageID.302).

Plaintiff's counsel, who withheld the requested discovery due to privilege concerns, should be baselessly sanctioned. Obviously, Plaintiff's counsel could not have been sanctioned for protecting their client's privilege.

On November 12, 2022, Mr. Warner again subjected Plaintiff to unnecessary motion practice through his baseless Motion for Order and Offer of Proof. *See* ECF No. 34. The Motion sought an Order finding that Plaintiff's Promissory Note with Defendant's felon brother was enforceable, a preposterous position considering that the court in that case already found that Defendant's brother perpetrated a fraud on Plaintiff, permitting Plaintiff to treat the Note as void or voidable as a matter of law. *See* ECF No. 34, PageID.957-958.

On November 28, 2022, Mr. Warner's trend of absurd motion practice continued, this time with a Motion to Compel Depositions and for Sanctions. *See* ECF No. 41. The next day, on November 29, 2022, Mr. Warner filed a reply in further support of the Motion for Order and Offer of Proof. For a second time, Mr. Warner impermissibly disclosed settlement communications and, to further degrade the settlement privilege and violate Rule 408, he included a proposed settlement agreement as an exhibit. *See* ECF No. 43, PageID.1599 & PageID.1599, n. 2; *see also* ECF No. 43-1. Mr. Warner seemingly cannot help but violate Rule 408 to eke out any strategic benefit, no matter the ethical or legal cost. Mr. Warner's patently

11

inappropriate behavior required Plaintiff to file a sur-reply, thereby again increasing costs.

Thankfully, on February 2, 2023, the Court denied the Motion to Compel Discovery and the Motion for Proof. *See* ECF No. 58, PageID.1882 & 1886, 1889-1890. The Court properly found the discovery sought would impermissibly intrude on the attorney-client privilege and attorney work product doctrine. *See id.* at PageID.1885-1886. The Court also found that Plaintiff was permitted to treat the Promissory Note as void or voidable, at its election. *See id.* at PageID.1897. The Court also expressly limited the topics of Plaintiff's deposition, ***specifically*** forbidding Mr. Warner from inquiring into settlement discussions, privileged communications, and attorney work product. *See id.* at PageID.1886,1901.

On February 22, 2023, Plaintiff moved for summary judgment. *See* ECF No. 66. In response, Mr. Warner separately moved for summary judgment in favor of Defendant on Counts II and III of Plaintiff's Complaint. *See* ECF No. 71. Defendant's entire argument is premised on the contention that the Promissory Note is enforceable -- an assertion already squarely rejected by the Court. *See id.*

On April 14, 2023, Defendant's counsel filed a ***second*** Motion for Summary Judgment on Counts II and III of Plaintiff's Complaint. *See* ECF No. 74. Mr. Warner needlessly duplicated his legal arguments -- which again, already were rejected -- when he simply could have left the Court to address Counts II and III on the then-

pending summary judgment briefings. Plaintiff was required to respond to this patently duplicative and vexatious Motion for Summary Judgment.

Finally, on April 10, 2023, Defendant moved to continue the deposition of David Kang at the Flint Courthouse. *See* ECF No. 73. For the reasons set forth below, the first deposition of David Kang was a veritable exhibition in frivolity: Mr. Warner failed to ask a single coherent question, opting instead to bully Mr. Kang, intrude on the privilege, and disparage Plaintiff's counsel. The idea of a second round of this inanity is preposterous – especially when Mr. Warner filed a motion for summary judgment (twice) purporting that there are no material factual disputes precluding summary disposition, negating the need for the further discovery he conflictingly seeks and confirming his true interest is in unlawfully multiplying these proceedings.

**B.    Mr. Warner's Behavior Before And During Mr. Kang's Deposition Is Sanctionable.**

Throughout his examination, Mr. Warner demonstrated an utter lack of interest in asking any meaningful, material, non-privileged questions. Mr. Warner's actions during the deposition are in line with his overarching vexatious and duplicative litigation strategy impermissibly designed to harass, embarrass, and waste time and money. He must be sanctioned for the waste he has caused.

Plaintiff produced Mr. Kang for a deposition in his individual capacity and as a Rule 30(b)(6) witness, on March 20, 2023. From the outset, it was apparent that Mr. Warner was looking to depose Mr. Kang both to harass and embarrass him and

to justify further litigation.[5] Mr. Warner set the tone of the deposition at the very beginning when, shortly after telling Mr. Kang he could ask for clarification on any question, he refused to clarify a question:

> Q: ***You can ask for a clarification*** --
>
> A: Perfect.
>
> Q: -- of my questions. Do you understand that?
>
> A: Uh-huh. …
>
> Q: And you understand that this transcript may be used at trial or in any other proceedings in this court case?
>
> A: Specific to this court case.
>
> Q: That's what the question was is --
>
> A: I'm just confirming. Right.
>
> Q: I'm just asking the question.
>
> A: Yes. ***And I'm confirming and trying to clarify if it's per this court case.***
>
> Q: Well, I asked you the question. ***I'm not expanding my question.***
>
> MR. BAUCHNER: Well, you also invited the witness to ask for clarification if he didn't understand the question, which he just did.

*See* **Exhibit B** at pp. p. 8:9-12, 8:22-9:11 (emphasis added).[6]

---

[5]     Indeed, Mr. Warner achieved his goal at the deposition by artificially manufacturing an excuse for additional motion practice. Mr. Warner filed a frivolous Motion to Compel the Continuance of Deposition, which was opposed by Plaintiff for the reasons set forth in its response, which is incorporated herein by reference. *See* ECF No. 73; *see also* ECF No. 76 (Plaintiff's response). The frivolity of the Motion serves as a further basis for sanctions against Mr. Warner.

[6]     Mr. Warner also impermissibly and incredibly brought his personal video camera with him, and proceeded to record the deposition for his personal use as any uncertified recording is inadmissible. *See* Bauchner Decl., **Exhibit B** at pp. 5:22-6:12. Plaintiff never gave permission for such an uncertified recording. Mr. Warner's conduct is bizarre, harassing, and serves no legitimate strategic purpose.

However, Mr. Warner's vexatious gamesmanship began before the deposition even started. Approximately five minutes before the deposition was scheduled to begin, Mr. Warner emailed the intended deposition exhibits to Plaintiff's counsel rather than providing hardcopies. *See id.* at p. 24:10-23. When confronted about his gamesmanship, Mr. Warner told Plaintiff's counsel to simply use counsel's "very large Mac laptop that's at least 15 inches in screen size" to look at the exhibits. *See id.* at p. 25:6-16. When counsel did precisely that, Mr. Warner chastised him and again insinuated that Plaintiff's counsel was acting nefariously. *See id.* at pp. 78:13-79:17. Worse yet, Mr. Warner failed to present complete exhibits: ***every*** exhibit (all confusingly marked out of order as Exhibit OO, Exhibit S, Exhibit L, and Exhibit M, respectively) was incomplete in violation of Fed. R. Evid. 106. *See id.* at pp. 24:24-25:5, 85:16-25, 124:20-125:8, 150:8-18. Mr. Warner made no attempt to remedy his violations of the Rule of Completeness and instead attempted to force examination on inadmissible exhibits. Mr. Warner tried to hide the proverbial ball by providing counsel with these incomplete exhibits just moments before the deposition, then prevented counsel from inspecting the incomplete exhibits by chastising counsel for using his laptop while refusing to provide hardcopies, as is custom.

Moreover, Mr. Warner flagrantly disregarded the Court limited Topic List and drilled Mr. Kang on such wildly irrelevant topics as his "personal concerns" about

COVID-19 (*id.* at p. 10:12-23); his attorneys' health (*id.* at pp. 9:24-10:8); Mr. Kang's personal religious beliefs (*id.* at p. 45:17-19); the Biblical story of Cain and Abel (*id.* at p. 142:3-24); Mr. Kang's trust in his family (*id.* at pp. 17:22-18:8); the commission (not conviction) of any felonies by Mr. Kang's family members (*id.* at p. 14:10-14); whether Mr. Kang's family members ever brought "shame upon the family" (*id.* at p. 14:16-19); doubling down on the "shame" questioning by asking about "dishonor" brought on the family (*id.* at p. 15:3-4); whether Mr. Kang's family members ever committed crimes (*id.* at p. 17:11-20); Mr. Kang's family secrets, including hypothetical "demons" like alcoholism and infidelity (*id.* at pp. 18:9-19:13); and Mr. Kang's personal wealth (*id.* at pp. 90:22-91:10).

Mr. Warner's motivations in asking these questions are obvious:  knowing he had no legitimate strategic or evidentiary purpose to conduct the deposition,[7] Mr. Warner instead opted to harass, embarrass, and guilt Mr. Kang into dismissing the case. There was nothing of legal value for Mr. Warner's client to gain from asking Mr. Kang about Kang family secrets, "shame" brought upon the family,[8] Mr. Kang's

---

[7]    Both parties filed for summary judgment and certified there are no material facts in dispute. *See* ECF Nos. 66, 71, 74. Therefore, no material facts could have been discovered or clarified by Mr. Kang's deposition.

[8]    Mr. Warner was relying on a racist, anti-Asian stereotype about "shame" in Asian families. *See* Sam Louie, MA, LMHC, "Asian Shame," Psychology Today (November 12, 2018). Mr. Kang is a Korean American man with ties to Korea, which he told Mr. Warner about. *See* Bauchner Decl., **Exhibit B**, p. 13:18-20. Mr.

personal religious beliefs or, most bafflingly, Plaintiff's counsel's health concerns. These topics of inquiry are beyond irrelevant to Defendant's conversion of funds fraudulently acquired by his brother. Rather, they are preposterous inquiries serving no purpose but to bully Mr. Kang while driving up Plaintiff's litigation costs.

Mr. Warner, however, was not satisfied with merely battering Mr. Kang with irrational and irrelevant questions. In violation of the Court's February 2, 2023 Order, Mr. Warner also repeatedly and persistently inquired about information and communications protected by the attorney-client privilege and the attorney work product doctrine -- even after reasonable warnings from Plaintiff's counsel.

During no less than *nine separate lines of questioning*, Mr. Warner asked questions directly intruding upon communications protected by the attorney-client and attorney work product privileges. *See id.* at pp. 43:17-47:16, 94:14-25, 96:1-11, 102:1-24, 120:15-121:2, 122:1-16, 136:1-8, 163:14-18, 173:10-174:16. The number of actual instances of these violative inquiries is far greater as Mr. Warner would habitually ask the same or similar violative question *immediately after* invocation of the privilege by Mr. Kang and warnings from Plaintiff's counsel. A representative example follows:

---

Warner's reliance on a racial stereotype makes his intentions obvious. The racially motivated and pointless questioning is but one *more* reason to sanction Mr. Warner.

> Q: So your attorneys at Kleinberg Kaplan never told you that [non-party Paul Alarcon] never spent any of the monies and, so, therefore, he could quickly return them back to Ria?
>
> MR. BAUCHNER: Objection. Requires the client to divulge privileged communications. I'll instruct you not to answer what your attorneys at Kleinberg told you.

*See id.* at pp. 43:17-24. Mr. Warner continued the invasive questioning:

> Q: So the question that I'm asking, was there communication -- I'm not going to ask you what the communication was. But was there a communication from Kleinberg and Kaplan about the ability of Paul Alarcon to quickly pay Ria the monies that Paul had transferred to Paul Alarcon?
>
> MR. BAUCHNER: Objection. Instruct the witness not to answer. You said you're not going to ask him what the communication was, but then you just defined the communication and asked if that's what they communicated to him, which invades the privilege.[9]

*See id.* at pp. 45:20-46:7. Indeed, Mr. Warner spent most of the deposition fruitlessly trying to trick Mr. Kang into divulging privileged communications. Not only was his behavior vexatious and in violation of the Federal Rules, but it also violated the plain language of the Court's February 2, 2023 Order limiting the scope of the deposition by, among other things, properly forbidding inquiring into privileged communications.

In addition, Mr. Warner demonstrated he had no interest in Mr. Kang's testimony by way of engaging in lengthy preambles and "attorney testimony."

---

[9] In other words, one cannot skirt the privilege by asking the witness to confirm the substance of a conversation. This would be the equivalent of a prosecutor asking a criminal defendant whether the defendant and his counsel had a conversation about pleading to a crime.

Throughout the deposition, Mr. Warner supplanted Mr. Kang's testimony with his own testimony. The result was Mr. Warner placing on the record various theories and speculations wholly unsupported by the facts.

For example, Mr. Warner prefaced questions posed to Mr. Kang by speculating that Plaintiff's attorneys failed to communicate with Mr. Kang. *See id.* at p. 102:1-6. Mr. Warner also testified -- for nearly a whole page -- about what other non-parties might have done with the money they were wrongfully given. *See id.* at p. 104:1-20. Mr. Warner further testified about his legal interpretation of privileged documents, concluding his testimony without even asking a question. *See id.* at pp. 115:23-116:7. Mr. Warner took the extraordinary step of "testifying" that he felt the litigation was attorney-driven and hurled disparaging allegations at Plaintiff's counsel, and then asked Mr. Kang to adopt those allegations. *See id.* at p. 171:15-21.

The consistency and brashness of the questioning demonstrates Mr. Warner's actions were knowing and deliberate; more than satisfying the objective standard warranting sanctions. *See Holmes v. City of Massillon*, 78 F.3d 1041, 1049 (6th Cir. 1996) (the misconduct need only rise above simple inadvertence or negligence); *Jones v. Continental Corp.*, 789 F.2d 1225, 1230 (6th Cir. 1986) (the statute requires only objective bad faith -- the absence of subjective bad faith does not excuse the otherwise blameworthy conduct).

Not satisfied with speculation and fabrications, Mr. Warner also outright mischaracterized facts and evidence to suit his conspiracy theories about this matter. Mr. Warner presented Mr. Kang with an exhibit, then instructed Mr. Kang that the exhibit stated something other than its plain text. *See id.* at 97:18-99:15. For example, Mr. Warner presented Mr. Kang with an email from Plaintiff's former counsel stating that Plaintiff was willing to release Defendant from certain claims, with conditions; however, Mr. Warner told Mr. Kang that former counsel outright rejected a settlement offer in the offered email reflecting a ***wholesale fabrication***. *See id.* at pp. 114:14-115:21. Mr. Warner also misstated the legal effect of certain documents to induce Mr. Kang into agreeing with a false premise about Defendant's brother's legal obligations. *See id.* at pp. 130:16-131:6, 132:21-135:11.

Mr. Warner also repeatedly disparaged Plaintiff's counsel -- past and present -- by thinly veiling the disparagement as "questions."  Mr. Warner repeatedly disparaged prior counsel, telling Mr. Kang that Plaintiff's counsel kept him in the dark on certain information. *See id.* at pp. 102:1-10, 171:15-21. Mr. Warner further tried to twist Plaintiff's current counsel's objections to portray counsel as incompetent and unaware of what Plaintiff filed in this matter. *See id.* at p. 109:22-110:16. Mr. Warner also sought to create doubt in Mr. Kang's mind about his counsel's competency. These baseless *ad hominem* attacks ***alone*** warrant sanctions.

Finally, Mr. Warner made a mess of his own deposition transcript by refusing to separate Mr. Kang's testimony in his individual capacity from his testimony in his Rule 30(b)(6) capacity. Mr. Warner asked Mr. Kang if he was unable to testify to certain topics; Plaintiff's counsel sought clarification that the deposition was going to shift to Rule 30(b)(6) testimony. *See id.* at p. 62:1-9. Mr. Warner absurdly casted this clarification as "instructing [Mr. Kang] not to answer." *See id.* at pp. 62:23-65:1. Mr. Warner continued to press Mr. Kang for an answer without the requested clarification, while Plaintiff's counsel continued to ask whether he was examining the witness in his individual or Rule 30(b)(6) capacity. *See id.* at pp. 62:23-65:1. When Mr. Warner failed to differentiate the questioning after three requests for clarification, Plaintiff's counsel stated that Mr. Kang would now proceed as a Rule 30(b)(6) witness. *See id.* at p. 65:6-22. In response to this simple distinction, Mr. Warner impetuously asked:

> Q: Mr. Kang, do you have split personalities whereas everything that we had just asked you[,] you can't answer on behalf of Ria and now you're going to switch to a corporate identity in which all the questions I previously asked you now can answer? Is that correct?

*See id.* at p. 66:1-7. Instead of admitting that he does not know the difference between a percipient witness and a Rule 30(b)(6) witness, Mr. Warner offensively chose to accuse the witness of suffering from multiple personality disorder. Mr. Warner's refusal to comply with the Rule governing corporate designee depositions further demonstrates patent bad faith and sanctionable conduct.

### C. Mr. Warner Contacted Plaintiff's Prior Counsel's Former Paralegals And Associates To Extract Privileged Information.

Shockingly, Mr. Warner improperly contacted former paralegals from Plaintiff's prior counsel's firm to extract privileged information -- perhaps hoping they would be unaware of their ethical obligations. *See* Bauchner Decl. ¶ 5.

He also sought information from Plaintiff's prior counsel's former associate, Pamela Frederick. *Id.* at ¶ 6. When Ms. Frederick rightfully did not respond, Defendant's counsel subpoenaed her, contacted her current supervisors at her new firm to accuse of her of being nonresponsive, and then served a subpoena on her at her firm. *Id.* When the receptionist told the process server that Ms. Frederick was working remotely, he went on a tirade calling her firm a "scumbag law firm," causing embarrassment to Ms. Frederick in her place of business. *Id.* After months of pursuing Ms. Frederick's deposition, Defendant's counsel suddenly "suspended" her deposition indefinitely, noting that "after further consideration perhaps [Plaintiff's representatives] can answer some of the written questions negating the need to depose Ms. Frederick," which, given the nature of the questions, was obvious from the start. *See* Bauchner Decl., **Exhibit A**.

\* \* \*

The above mere examples of Mr. Warner's patent misconduct confirm it rises far above simple inadvertence or negligence, warranting sanctions. *See Holmes v. City of Massillon*, 78 F.3d 1041, 1049 (6th Cir. 1996). While counsel to Plaintiff are

loathe to advance such a request, Mr. Warner's persistent and endemic misconduct in stark and deliberate violation of the Federal Rules of Civil Procedure, Federal Rules of Evidence, and this Court's Orders, compel he be sanctioned to stymie further misconduct in this and any other proceeding in which he willfully pursues such unprofessional behavior.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that its Motion for Sanctions be granted, awarding Plaintiff sanctions against Mr. Warner,[10] and that the Court award such other and further relief as justice so requires.

Respectfully submitted,

**ANSELL GRIMM & AARON, P.C.**
*/s Joshua S. Bauchner*
Joshua S. Bauchner, Esq.
Layne A. Feldman, Esq.
365 Rifle Camp Road
Woodland Park, New Jersey 07424
973.247.9000 (t)
jb@ansellgrimm.com

**HEED LAW GROUP PLLC**
*/s Thomas P. Heed*
Thomas P. Heed, Esq.
39555 Orchard Hill Place, Suite 600
Novi, Michigan 48375
Telephone: 248.465.8655
theed@heedlawgroup.com

*Attorneys for Plaintiff*
**RIA R SQUARED, INC.**

---

[10]   Plaintiff reserves the right to file a Certification of Services setting forth the full amount of sanctions sought after the Motion is granted.

## **<u>CERTIFICATE OF SERVICE</u>**

I certify that on May 23, 2023, I electronically filed the foregoing document(s) and that they are available for viewing and downloading from the Court's CM/ECF system, and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: May 23, 2023

*/s/ Layne A. Feldman*
Layne A. Feldman