UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| RIA R SQUARED, INC., <br>      Plaintiff, <br> v. <br> PHILLIP MCCOWN, <br>      Defendant. <br> _____/ | Case No. 21-12937 <br><br> Curtis Ivy, Jr. <br> United States Magistrate Judge |

**ORDER ON PLAINTIFF'S FEES AND COSTS AND DENYING
DEFENDANT'S MOTION FOR RULE 68(d) COSTS (ECF No. 88)**

This matter is before the Court on Defendant's motion for Rule 68(d) costs and Plaintiff's bill of costs. (ECF Nos. 88, 94).

 A. Bill of Costs

The Court granted in part Plaintiff's motion for summary judgment, awarding judgment to it on Count III of its complaint for statutory conversion under M.C.L. § 600.2919a(1)(b). There was no amount of damages awarded because Defendant had returned to Plaintiff all the money he received from his brother, so there was no exchange of property to be ordered. Michigan's statutory conversion provides for an award of attorney fees and costs for having to prosecute the action for the return of property. The Court awarded Plaintiff's fees and costs incurred in bringing the action (the filing fee, the cost of drafting and serving the complaint, and other costs related to brining this action) up to the point of the

return of the property in February 2022. The parties could not agree on Plaintiff's bill of costs, so it submitted its bill of costs as directed by the Court. (ECF No. 94). Defendant responded in opposition. (ECF No. 95).

As explained in the petition for fees and costs, Plaintiff retained Kleinberg, Kaplan, Wolf & Cohen ("KKWC") from New York and Thomas Heed from Michigan as counsel in the beginning stages of the litigation. Attorneys Stephen Popofsky and Pamela Frederick, and legal assistant Juliet Remi performed work for Plaintiff from KKWC. Popofsky is a partner at KKWC with 41 years of commercial litigation experience. He charged $810 per hour on this case. After graduating from law school in 2016, Frederick was an associate at KKWC. She charged $645 per hour. Remi charged $185 per hour. (ECF No. 94, PageID.4794). Heed is the founding member of Heed Law Group, of which he appears to be the only attorney, and has been practicing law since 1998. He charged $400 per hour on this matter. (*Id.* at PageID.4795). The total requested for KKWC's services is $22,904, and for Mr. Heed it is $1,456.96. That, combined with costs, makes a requested total of $24,760.96.

Plaintiff describes attorney qualifications and hourly rates without affidavit or other support. Even so, there is no reason to doubt counsel's minimal account of the attorneys and legal assistant's resumes. Plaintiff failed, however, to acknowledge that in the Sixth Circuit, the reasonable hourly rate is the "prevailing

market rate in the relevant community." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000) (citation and emphasis removed). "[W]hen a counselor has voluntarily agreed to represent a plaintiff in an out-of-town lawsuit, thereby necessitating litigation by that lawyer primarily in the alien locale of the court in which the case is pending, the court should deem the 'relevant community' for fee purposes to constitute the legal community within that court's territorial jurisdiction." *Id.* Without strong support for comparing reasonable hourly rates in New York City, the Court will use the State Bar of Michigan's Economics of Law Practice 2023 survey to assess the reasonable hourly rate for all attorneys on this case.

Beginning with Mr. Heed, his $400 per hour is a reasonable rate considering his number of years as a practicing attorney and that he appears to be a solo practitioner at his firm, the Heed Law Group. His rate of $400 per hour is between the 75th and 95th percentiles for solo practitioners in Michigan. Given the rate's placement on the scale, the Court sees no reason for a departure.

Mr. Popofsky is a partner with decades of litigation experience. The form of his partnership is unclear. The Court will assume he is an equity partner or shareholder. In Michigan, an equity partner or shareholder in the 95th percentile charges $730 per hour; in the 75th percentile they would charge $500 per hour. Here, Popofsky charged $810 per hour, well above the 95th percentile. Plaintiff

3

did not provide circumstances that would entitle Popofsky to a higher-than-average hourly rate for his work on this case. So the Court will reduce his hourly rate to $650. This amount is between the 75th and 95th percentiles, and closer to the 95th percentile.

Ms. Frederick had not been a practicing attorney very long when she performed work for Plaintiff. An associate in Michigan is charging an average of $291 per hour. At the 75th percentile, they are charging $335. Frederick's request for $645 per hour far exceeds these numbers. The Court sees no reason why Frederick should receive more than the average hourly rate in Michigan. Thus, the Court will reduce her fee to $291 per hour.

The Court sees no reason to deviate from legal assistant Ms. Remi's $185 per hour.

Next is the number of hours reasonably expended. Defendant questions the number of hours spent emailing Mr. Heed or others. For instance, on November 30, 2021, Mr. Popofsky spent 1.7 hours "E-mailing seeking Michigan counsel." Defendant says KKWC had a prior relationship with Mr. Heed, suggesting that KKWC did not need to search for other counsel. But a law firm may conduct a search for local counsel beyond counsel previously used. On December 14, 2021, Ms. Frederick spent 2.8 hours "Corresponding about retainer for Michigan counsel; transmitting complaint to Michigan counsel to begin drafting; reviewing

correspondence relating to Michigan Counsel." (ECF No. 94-1, PageID.4803). That day, Mr. Heed spent .10 hours reading an email from KKWC attorneys. (*Id.* at PageID.4809). Defendants suggests it should not have taken 2.8 hours to draft an email that took .10 to read. The Court does not credit this suggestion because Frederick did more than draft one email in 2.8 hours. Mere suspicion that Frederick did not spend 2.8 hours working on the case does not warrant a reduction in time.

One of Defendant's arguments against the number of hours requested to be compensated is well taken. He points to the number of time entries for researching Defendant's address. Defendant responded to a subpoena served on him in the Wyoming case and his counsel was in communication with Plaintiff's counsel before this lawsuit was filed. Plaintiff did not address this in the reply brief. Thus, it is unclear why time was spent on the address. That said, in counsels' block-billed timesheet, it is difficult to parse out exactly how much time was spent researching Defendant's address. Ms. Remi spent .4 hours conferring regarding the address and Defendant's place of employment. She also spent a portion of 1.4 hours updating contact information and confirming Defendant's address. Ms. Frederick spent a portion of 2.8, 1.7, and 1.5 hours corresponding about or confirming the address on separate dates. (*Id.* at PageID.4802). A reduction in hours is warranted here. Ms. Remi's hours will have 1.3 hours subtracted. The

5

Court will subtract 2.5 hours from Ms. Frederick's time to account for time spent on the address.

In sum, the number of hours awarded are these: Mr. Popofsky's 15.5 hours, Ms. Frederick's 15.5 will be reduced to 13.0, and Ms. Remi's 1.9 will be reduced to 0.6 hours. Mr. Popofsky's time will be awarded $10,075 (15.5 hours x $650 per hour); Ms. Frederick's time will be awarded $3,783 (13.0 hours x $291 per hour); and Ms. Remi's time will be awarded $111 (0.6 hours x $185 per hours); totaling $13,969. Mr. Heed's total of $1,400 is awarded. The costs claimed are also awarded, totaling $456.96 ($54.96 in mailing the check + $402 filing fee). Defendant asserts that Plaintiff should not be compensated for overnight delivery of the check sent after the agreement to return the funds. The Court ordered that fees and costs were awarded up to the point of the return of the funds. That the funds were actually sent after the agreement is not cause to subtract the cost of mailing the check. The $54.96 to overnight the check will be awarded. This comes to a final award of fees and costs of $15,825.96.

Defendant opposes an award of fees and costs. He argues that Plaintiff perhaps has not actually paid an attorney for services provided before repayment of the subject funds. (ECF No. 95, PageID.4819-21). Whether the client has actually paid counsel is not a consideration the Court makes in awarding fees and costs. He asserts that because Plaintiff was not "damaged" by Defendant's holding on to the

6

funds until February 2022, it is not entitled to fees and costs. (ECF No. 95, PageID.4829). The Court already addressed this and awarded fees and costs in the Opinion and Order on the motions for summary judgment, and will not revisit the issue.

Defendant also argues that damages should not be awarded because Plaintiff largely did not succeed on its claims—it prevailed on one of three claims, and it received $0 in damages related to it. In the alternative, Defendant contends that any award should be reduced by 2/3 because Plaintiff was successful on one of three claims. (*Id.* at PageID.4825). The Court partially agrees with Defendant. The Court characterized Plaintiff's losing claims as "near-frivolous," lacking evidentiary support. The Court is not inclined to award fees and costs for bringing near-frivolous claims. But here, too, it is difficult to parse hours spent on the successful claim from hours spent on the unsuccessful claims. Yet reducing the award by 2/3 goes too far. The Court reduces the total award by half to account for subtracting time spent on the losing claims. Thus, the total award to be paid to Plaintiff is **$7,912.98**. Defendant is directed to remit this amount to Plaintiff **within 30 days** of this Order.

  B. <u>Defendant's Motion for Rule 68(d) Costs</u>

Defendant made a Federal Rule of Civil Procedure 68 offer of judgment on January 11, 2022, in favor of Plaintiff for $23,699.33, plus attorney fees, costs, and

interest.  Plaintiff rejected the offer.  Rule 68(d) provides that the offeree who rejects the Rule 68 offer must pay the costs incurred after the offer was made if the final judgment is not more favorable than the unaccepted offer.  Defendant argues that he has a right to post-offer costs because the judgment Plaintiff obtained on the statutory conversion claim was not more favorable than the offer.  Plaintiff was awarded $0 in damages, less than the value of the offer.  Defendant seeks $2,401.93 in costs.  (ECF No. 88, PageID.4667).

      Plaintiff argues that Rule 68(d) costs are unavailable to Defendant because he obtained judgment in his favor on Counts One and Two of the complaint, making him a prevailing party.  (ECF No. 90, PageID.4747) (citing *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 352 (1981)).  It also argues that the judgment was not less favorable than the offer because the Court would have awarded $23,699.99 to Plaintiff on the statutory conversion claim had Defendant not already returned the money.  Thus, the judgment was essentially in the same amount as the offer.  (*Id.* at PageID.4748-49).  Lastly, Plaintiff argues that its pre-offer costs sought in its bill of costs exceeds Defendant's offer, so an award to Defendant would be inappropriate.  (*Id.* at PageID.4749-50).

      Plaintiff's first argument is not accepted.  Defendant did not prevail on all the claims.  Prevailing on only some claims does not preclude Rule 68(d) costs.

8

"Rule 68 requires the court to compare a settlement offer that includes 'costs then accrued' with the 'judgment that the [claimant] finally obtains.'" *Hescott v. City of Saginaw*, 757 F.3d 518, 527 (6th Cir. 2014)  (quoting Fed. R. Civ. P. 68). The judgment includes pre-offer costs and fees actually awarded. *Id.* (citation omitted).  Though Defendant's settlement offer was for the return of funds plus fees, costs, and interest, the exact calculation of the value of that offer is not before the Court.  (*See* ECF No. 88-2).  As a result, there is no number above the return of funds against which the Court can compare the judgment.  Especially difficult is calculating the amount of interest that would have accrued.  *See* § 3006.1 Consequences of Rejection of Offer—Determination Whether Offer of Judgment More Favorable, 12 Fed. Prac. & Proc. Civ. § 3006.1 (3d ed.) ("Rule 68 is actually a tool for defendant to use, and defendant alone determines the provisions of the offer.  Since defendant has drafted those provisions, the courts generally interpret the offer against defendant. Consistent with that, the burden should be on defendant to demonstrate that those provisions are in fact more favorable than what plaintiff obtained by judgment.").  Further, based on the briefing, in Defendant's view, the offer for reasonable attorney fees includes Mr. Heed's fees.  (*See* ECF No. 92, PageID.4780).

The Court awarded Plaintiff judgment on the statutory conversion claim. Plaintiff is correct that had Defendant not already returned the funds, the Court

would have entered judgment in favor of Plaintiff in the amount of $23,699.99. That the funds were already returned does not negate the value of the judgment. So the judgment is not $0, as Defendant insists. The Court has now awarded attorney fees and costs to Plaintiff in the amount of $7,912.98. The judgment total is, effectively, $31,612.97, which exceeds the amount of the funds. As mentioned, courts construe the offer against the offeror. Doing so here leads to dismissing the offer of payment of interest, because the Court is not going to attempt to calculate interest. This leaves an offer of return of the funds plus Mr. Heed's attorney fees and costs. Plaintiff's judgment is not unfavorable against the offer; the judgment is greater than the offer. Thus, Defendant is not entitled to an award of post-offer costs. The motion is **DENIED**.

    **IT IS SO ORDERED**.

Date: October 24, 2023                      s/Curtis Ivy, Jr.
                                                          Curtis Ivy, Jr.
                                                          United States Magistrate Judge